1  KAREN P. HEWITT
   United States Attorney
2  CHRISTOPHER M. ALEXANDER
   Assistant U.S. Attorney
3  California Bar. No. 201352
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California  92101-8893
5  Telephone: (619) 557-7425 /(619) 235-2757 (Fax)
   Email: Christopher.M.Alexander@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA          )   Criminal Case No. 08CR0135-LAB
                                      )
11              Plaintiff,            )   HEARING DATE:     July 21, 2008
                                      )   TIME:                 2:00 p.m.
12                                    )
                                      )
13          v.                        )   UNITED   STATES'   RESPONSE   TO
                                      )   DEFENDANT'S MOTIONS:
14                                    )
    GUILLERMO GARCIA-LOPEZ,           )   (1)   COMPEL DISCOVERY/PRESERVE
15                                    )         EVIDENCE;
              Defendant.              )   (2)   DISMISS   DUE   TO   FAILURE TO
16                                    )         ALLEGE ALL ELEMENTS;
                                      )   (3)   DISMISS   DUE   TO   GRAND JURY
17                                    )         INSTRUCTIONS;
                                      )   (4)   SUPPRESS STATEMENTS;
18                                    )   (5)   P R E C L U D E    E V I D E N C E  OF
                                      )         DEPORTATIONS, ETC.;
19                                    )   (6)   RECONSIDERATION; AND
                                      )   (7)   FOR  LEAVE  TO  FILE FURTHER
20                                    )         MOTIONS.
                                      )
21                                    )
                                      )
22                                    )
                                      )
23                                    )
                                      )
24                                    )
                                      )
25                                    )
                                      )
26                                    )   TOGETHER WITH STATEMENT OF FACTS,
                                      )   MEMORANDUM  OF  POINTS  AND
27                                    )   AUTHORITIES
                                      )
28  _____  )

1    COMES NOW the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel,

2   KAREN P. HEWITT, United States Attorney, and Christopher M. Alexander, Assistant United States

3   Attorney, and hereby files its Response and Opposition to Defendants' above-referenced motions. This

4   Response and Opposition is based upon the files and records of the case together with the attached

5   statement of facts and memorandum of points and authorities.

6                                              **I**

7                            **STATEMENT OF THE CASE**

8    On January 3, 2008, Defendant made an appearance and waived time. The Court scheduled

9   another preliminary hearing date. On January 15, 2008, the Court granted Defendant's request for a

10  competency examination.

11    On January 16, 2008, a federal grand jury in the Southern District of California returned an

12  Indictment charging Defendant Guillermo Garcia-Lopez ("Defendant") with being a deported alien

13  found in the United States after deportation in violation of 8 U.S.C. § 1326. The competency hearing

14  was continued on February 19 and 21, 2008 and April 8 and 11, 2008. On May 14, 2008, the Court

15  found Defendant competent. Next, Defendant was arraigned and entered a not guilty plea. The Court

16  set a motion hearing date for June 23, 2008.

17    On May 27, 2008, the Court held a status conference. At this status, defense counsel requested

18  to review the A-File. The Court denied this request. The United States was to produce requested A-File

19  discovery by May 30, 2008. The Court set a motion hearing for July 21, 2008. Any motions were to

20  be filed by June 16, 2008 and any supplemental motions by July 7, 2008. The United States was to

21  respond by July 14, 2008.

22    On June 16, 2008, Defendant filed motions to compel discovery, dismiss the Indictment on

23  various grounds, suppress statements, and grant leave to file further motions. On July 8, 2008,

24  Defendant filed motions to preclude evidence, reconsideration, and grant leave to file further motions.

25  The United States now responds.

26  / / /

27  / / /

28  / / /

/ / /

## II

## STATEMENT OF FACTS

### A.    The Instant Offense

On Monday, December 10, 2007, at approximately 2:00 p.m., Senior Patrol Agents Scott Pinckney and James Jordan were assigned to the Murrieta, California area of operations. They responded to a call from the Escondido Police Department. Upon arrival, they met with Escondido Police Officer Holtz. Officer Holtz explained that she had come into contact with an individual, later identified as Defendant. Defendant was cited for having no bicycle license and possession of marijuana. Officer Holtz called Immigration and Customs Enforcement. Officer Holtz learned that Defendant had been previously deported. Next, Officer Holtz contacted Border Patrol. Senior Patrol Agents Pinckney and Jordan approached Defendant, identified themselves, and questioned him as to his citizenship. Defendant freely admitted that he was a citizen of Mexico, he did not have any immigration documents, and he crossed illegally near San Ysidro, California on May 30, 2007.

At approximately 2:30 p.m., Defendant was release to Border Patrol. He was taken to the Murrieta Border Patrol station. At the station, Defendant was entered into the Automated Biometric Identification System. This provided Defendant's true identity and some of his prior criminal and immigration histories.

Prior to contemplating criminal charges, Defendant completed a Form 215B, a Record of Sworn Statement. Defendant made a series of admissions.

At approximately 5:23 p.m., while being video taped, Senior Patrol Agent Pinckney advised Defendant in the Spanish language of his communication rights with the Mexican Consulate as witnessed by Senior Patrol Agent Jordan. Defendant stated that he understood this right. Senior Patrol Agent Pinckney advised Defendant in the Spanish language of his Miranda warnings as witnessed by Senior Patrol Agent Jordan. Defendant stated that he understood his rights and waived his right to remain silent.

1   Defendant admitted to the following: (1) being a citizen of Mexico with no legal right to enter

2   the United States; and (2) entering the United States in May of 2007.

3   **B.    Defendant's Criminal and Immigration History**

4   Defendant has a series of convictions which include the following:  Defendant was convicted

5   on September 17, 1997, of first degree burglary, in violation of California Penal Code § 460 and

6   received 10 years in prison. He was convicted on December 12, 1990, of possession of marijuana for

7   sale, in violation of California Penal Code § 460 and received 16 months in prison.  He was convicted

8   on January 29, 1990, of illegal entry, in violation of 8 U.S.C. § 1325 and received six months.

9   Concerning his immigration history, on January 27, 2006, Defendant was ordered deported.  On

10  April 29, 2007, February 2, 2007, June 16, 2006, January 27, 2006, October 23, 1998, and December

11  18, 1989, he and was physically removed from the United States to Mexico.

12  **III**

13  **MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE**

14  The United States has and will continue to fully comply with its discovery obligations under

15  Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (19 U.S.C. § 3500), Rule 16 of the Federal Rules

16  of Criminal Procedure, and Rule 26.2 of the Federal Rules of Criminal Procedure.  On January 2, 2008,

17  the United States provided 40 pages and one DVD as discovery.  In response to a request from

18  Defendant, on June 3, 2008, the United States provided an additional 52 pages of discovery.  In response

19  to a request from Defendant, on June 20, 2008, the United States provided a second copy of the DVD.

20  The United States has already delivered 92 pages and two DVDs of discovery to defense counsel

21  including investigative reports and Defendant's statements.  Nevertheless, Defendant makes a series of

22  discovery requests.  The following is the United States' response to Defendant's requests.

23  Initially, Defendant requests additional discovery concerning the deportation tapes and the Alien

24  Registration File ("A-File") associated with Defendant. The United States has requested any deportation

25  tapes associated with Defendant and will produce them (if they exist) when they arrive (despite them

26  being equally available to Defendant).  The United States will continue to produce discovery related to

27  Defendant's statements made in response to questions by agents.

28

Regarding the A-File request, the United States objects to this request. Even if Defendant could not ascertain the A-File information he seeks from the immigration court or another source, the A-File is not Rule 16 discoverable information. The A-File contains information that is not discoverable like internal government documents and witness statements. See Fed. R. Crim. P. 16(a). Witness statements would not be subject to production until after the witness testifies and a motion is made by Defendant. See Fed. R. Crim. P. 26.2. Thus, the A-File associated with Defendant need not be disclosed.

Defendant claims that the A-File must be disclosed because (1) it may be used in the United States' case-in-chief; or (2) it is material to his defense. The United States will turn over documents it intends to use in its case-in-chief. Evidence is material under Brady only if there is a reasonable probability that had it been disclosed to the defense, the result of the proceeding would have been different. United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001). However, Defendant has not shown how documents in the A-File are material.

In an effort to create materiality, Defendant claims that he will not be able to challenge the thoroughness of the search for his application to reenter the United States. Any cross-examination regarding the possibility of a nonexistent application for permission is irrelevant. In United States v. Rodriguez-Rodriguez, 393 F.3d 849, 856 (9th Cir. 2005), the defendant sought to elicit testimony on cross-examination from a witness for the United States regarding the following claims: (1) INS computers are not fully interactive with other federal agencies' computers; (2) over 2 million documents filed by immigrants have been lost or forgotten; (3) other federal agencies have the ability and authority to apply for an immigrant to come into the United States; and (4) the custodian never checked with the other federal agencies to inquire about documents relating to the defendant. Judge Lorenz sustained objections to this line of cross-examination finding that it was irrelevant. Id. The Ninth Circuit agreed stating that "[n]one of that information is relevant on the facts of this case, because it is uncontested that [the defendant] never made any application to the INS or any other federal agency." Id.

As in Rodriguez, Defendant has not presented any evidence that he had applied for reentry. As in Rodriguez, any testimony from witnesses for the United States regarding the types of checks performed to show the lack of an application for reentry would be irrelevant.

1    This type of cross-examination is also irrelevant to this § 1326 prosecution.  The Ninth Circuit

2  has stated what is required for permission to reapply:

> The INS has promulgated regulations that govern the process by which the Attorney
> General will "[c]onsent to [a deported alien] reapply[ing] for admission[.]" 8 C.F.R. §
> 212.2.  These regulations include the requirement that a deported alien must have
> remained out-side of the United States for a minimum of five consecutive years. Id. §
> 212.2(a). Pina-Jaime did not meet this requirement. Nor did he submit the required form
> I-212 to the INS to obtain consent of the Attorney General to reapply for admission. See
> United States v. Sanchez-Milam, 305 F.3d 310, 312-13 (5th Cir. 2002), cert. denied, 537
> U.S. 1139, 154 L. Ed. 2d 834, 123 S. Ct. 932 (2003).  Accordingly, the Attorney General
> did not "expressly consent[] to [Pina-Jaime's] reapplying for admission" as required by
> the statute.  See 8 U.S.C. § 1326(a)(2).

9  United States v. Pina-Jaime, 332 F.3d 609, 611-12 (9th Cir. 2003).  There is no evidence supporting that

10  Defendant has done so.  Accordingly, the thoroughness of the search is not a basis for production of the

11  entire A-File.

12    Finally, Defendant does not own the A-File.  It is an agency record.  Cf.  United States v.

13  Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997) (noting that A-File documents are admissible as

14  public records).

15    1.    Statements of Defendant

16    The United States has already produced reports disclosing the substance of Defendant's oral and

17  written statements.  The United States will continue to produce discovery related to Defendant's

18  statements made in response to questions by agents.  Relevant oral statements of Defendant are included

19  in the reports already provided.  Agent rough notes, if any exist, will be preserved, but they will not be

20  produced as part of Rule 16 discovery.

21    A defendant is not entitled to rough notes because they are not "statements" within the meaning

22  of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions

23  and they have been approved or adopted by the witness.  United States v. Bobadilla-Lopez, 954 F.2d

24  519 (9th Cir. 1992); United States v. Spencer, 618 F.2d 605 (9th Cir. 1980); see also United States v.

25  Alvarez, 86 F.3d 901, 906 (9th Cir. 1996); United States v. Griffin, 659 F.2d 932 (9th Cir. 1981).

26    2.    Arrest Reports and Notes

27    The United States has provided Defendant with arrest reports. As noted previously, agent rough

28  notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery.  The

1  United States is unaware of any dispatch tapes regarding Defendant's apprehension. The United States

2  will provide any arrest reports from witnesses the United States intends to call in its case-in-chief as well

3  as any reports containing Defendant's statements the United States intends to introduce against him.

4          3.      Brady Material

5          Again, the United States is well aware of and will continue to perform its duty under Brady v.

6  Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976) to disclose exculpatory

7  evidence within its possession that is material to the issue of guilt or punishment. Defendant, however,

8  is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused,

9  or which pertains to the credibility of the United States' case. As stated in United States v. Gardner, 611

10  F.2d 770 (9th Cir. 1980), it must be noted that:

11          [T]he prosecution does not have a constitutional duty to disclose every bit of information
         that might affect the jury's decision; it need only disclose information favorable to the
12          defense that meets the appropriate standard of materiality. [Citation omitted.]

13  Id. at 774-775.

14          The United States will turn over evidence within its possession which could be used to properly

15  impeach a witness who has been called to testify.

16          Although the United States will provide conviction records, if any, which could be used to

17  impeach a witness, the United States is under no obligation to turn over the criminal records of all

18  witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such

19  information, disclosure need only extend to witnesses the United States intends to call in its case-in-

20  chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d

21  1305, 1309 (9th Cir. 1979).

22          Finally, the United States will continue to comply with its obligations pursuant to United States

23  v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

24          4.      Sentencing Information

25          Defendant claims that the United States must disclose any information affecting Defendant's

26  sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83

27  (1963). The United States respectfully contends that it has no such disclosure obligation.

28

1    The United States is not obligated under Brady to furnish a defendant with information which

2  he already knows.  United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986).  Brady is a rule of

3  disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the

4  defendant.  In such case, the United States has not suppressed the evidence and consequently has no

5  Brady obligation.  See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

6    But even assuming Defendant does not already possess the information about factors which

7  might affect his guideline range, the United States would not be required to provide information bearing

8  on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior

9  to his sentencing date.  See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No

10  [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure

11  remains in value.").  Accordingly, Defendant's demand for this information is premature.

12    5.    Defendant's Prior Record

13    The United States has already provided Defendant with a copy of his criminal record in

14  accordance with Federal Rule of Criminal Procedure 16(a)(1)(D).

15    6.    Proposed 404(b) Evidence

16    Should the United States seek to introduce any similar act evidence pursuant to Federal Rules

17  of Evidence 404(b) or 609, the United States will provide Defendant with notice of its proposed use of

18  such evidence and information about such bad act at the time the United States' trial memorandum is

19  filed. However, to avoid any arguments concerning lack of notice, the United States intends to introduce

20  Defendant's prior immigration contacts and burglary and illegal entry convictions as evidence of intent

21  to enter the United States, alienage, prior deportation, and lack of application for admission.  Moreover,

22  Defendant's burglary conviction listed in the criminal history section above will be introduced to

23  impeach him should he testify.

24    Defendant also requests TECS reports.  The United States objects to this request.  The United

25  States does not intend to provide Defendant with Custom's TECS information unless the United States

26  decides to introduce such evidence pursuant to Rule 404(b). See United States v. Vega, 188 F.3d 1150,

27  1153 (9th Cir. 1999).  Otherwise, such evidence is only available to the defendant if it is "relevant to

28  the development of a possible defense," United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990)

(citations and quotations omitted), or it "enable[s] the accused to substantially alter the quantum of proof in his favor." United States v. Marshall, 532 F.2d 1279,1285 (9th Cir. 1976). Defendant has shown neither.

### 7. Evidence Seized

The United States has complied, and will continue to comply, with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

### 8. Preservation of Evidence

The United States will preserve all evidence to which Defendant is entitled to pursuant to the relevant discovery rules. However, the United States objects to Defendant's blanket request to preserve all physical evidence.

The United States has complied, and will continue to comply, with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs. The United States has made the evidence available to Defendant and Defendant's investigators and will comply with any request for inspection.

### 9. Henthorn Material

The United States will review the personnel files of all federal law enforcement individuals who will be called as witnesses in this case for Brady material. Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and United States v. Cadet, 727 F.2d 1452 (9th Cir. 1984), the United States agrees to "disclose information favorable to the defense that meets the appropriate standard of materiality . . ." United States v. Cadet, 727 F.2d at 1467, 1468. Further, if counsel for the United States

1   is uncertain about the materiality of the information within its possession in such personnel files, the

2   information will be submitted to the Court for in camera inspection and review.

3   / / /

4   / / /

5          10.    Tangible Objects

6          Again, the United States is well aware of and will fully perform its duty under Brady v.

7   Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory

8   evidence within its possession that is material to the issue of guilt or punishment.  Defendant, however,

9   is not entitled to all documents known or believed to exist, which is, or may be, favorable to the accused,

10  or which pertains to the credibility of the United States' case.

11         The United States has complied, and will continue to comply, with Rule 16(a)(1)(E) in allowing

12  Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence

13  which is within the possession, custody or control of the United States, and which is material to the

14  preparation of Defendant's defense or are intended for use by the United States as evidence in chief at

15  trial, or were obtained from or belong to Defendant, including photographs.

16         The United States, however, need not produce rebuttal evidence in advance of trial.

17  United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

18         11.    Expert Witnesses

19         Defendant requests written reports and summaries of any expert testimony pursuant to Federal

20  Rules of Criminal Procedure 16(a)(1)(G).  The United States will disclose to Defendant the name,

21  qualifications, and a written summary of testimony of any expert the United States intends to use during

22  its case-in-chief at trial pursuant to Fed. R. Evid. 702, 703, or 705.

23         At trial, the United States will offer the testimony of a Fingerprint Expert to establish

24  Defendant's identity and prior history.  The United States will provide a summary, and qualifications

25  of the expert when they are available.

26         Although not expected to give expert opinions based upon specialized knowledge, the United

27  States will also offer the testimony of a records custodian to introduce documents from Defendant's A-

28  File.  See Fed. R. Evid. 701 (such testimony is "helpful to a clear understanding of the determination

9                                08CR0135-LAB

of a fact in issue"); <u>United States v. VonWillie</u>, 59 F.3d 922, 929 (9th Cir. 1995) (in a drug case, the court found that "[t]hese observations are common enough and require such a limited amount of expertise, if any, that they can, indeed, be deemed lay witness opinion"); <u>United States v. Loyola-Dominguez</u>, 125 F.3d 1315, 1317 (9th Cir. 1997) (agent "served as the conduit through which the government introduced documents from INS' Alien Registry File".). This testimony will consist of explaining the purpose of the A-File, what documents are contained within the A-File, and the purpose of those documents.    12.    <u>Bias or Motive to Lie</u>

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

13-14. <u>Impeachment and Evidence of Criminal Investigation</u>

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses. <u>United States v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. <u>United States v. Gering</u>, 716 F.2d 615, 621 (9th Cir. 1983); <u>United States v. Angelini</u>, 607 F.2d 1305, 1309 (9th Cir. 1979).

15. <u>Evidence Affecting Perception</u>

The United States is unaware of any evidence indicating that a prospective witness has a perception, recollection, communication, or truth telling problem.

16. <u>Witness Addresses</u>

The United States will provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the United States' trial memorandum is filed, although delivery of such a list is not required. <u>See</u> <u>United States v. Dischner</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Culter</u>, 806 F.2d 933, 936 (9th Cir. 1986); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987). Defendant, however, is not entitled to the production of addresses or phone numbers of possible witnesses of the

1   United States.  See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996); United States v.

2   Thompson, 493 F.2d 305, 309 (9th Cir. 1977).  Defendant has already received access to the names of

3   potential witnesses in this case in the investigative reports previously provided to him.

4

5          17.    Witnesses Favorable to Defendant

6          The United States is not aware of any witness who made a favorable statement concerning

7   Defendant.

8          18.    Statements Favorable to Defendant

9          The United States is not aware of any witness who made a favorable statement concerning

10   Defendant.

11          19.    Jencks Act Material

12          As stated previously, the United States will comply with its obligations pursuant to Brady v.

13   Maryland, 373 U.S.  83 (1963), United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and the Jencks

14   Act.

15          20.    Giglio Information

16          As stated previously, the United States will comply with its obligations pursuant to Brady v.

17   Maryland, 373 U.S.  83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991),

18   and Giglio v. United States, 405 U.S. 150 (1972).

19          21.    Agreements Between the United States and Witnesses

20          The United States is unaware of any agreements between the United States and any witness who

21   may testify.

22          22-23.  Informants and Cooperating Witnesses

23          Defendant incorrectly asserts that Roviaro v. United States, 353 U.S. 52 (1957), establishes a

24   per se rule that the United States must disclose the identity and location of confidential informants used

25   in a case.  Rather, the United States Supreme Court held that disclosure of an informer's identity is

26   required only where disclosure would be relevant to the defense or is essential to a fair determination

27   of a cause.  Id. at 60-61.  Moreover, in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), the Ninth

28   Circuit held:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

<u>Id.</u> at 454. As such, the United States is not obligated to make such a disclosure, if there is in fact anything to disclosure, at this point in the case.

That being said, the United States is unaware of the existence of an informant in this case. However, as previously stated, the United States will provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the United States' trial memorandum is filed, although delivery of such a list is not required. <u>See</u> <u>United States v. Dischner</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Culter</u>, 806 F.2d 933, 936 (9th Cir. 1986); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987). Defendant, however, is not entitled to the production of addresses or phone numbers of possible witnesses of the United States. <u>See</u> <u>United States v. Hicks</u>, 103 F.3d 837, 841 (9th Cir. 1996); <u>United States v. Thompson</u>, 493 F.2d 305, 309 (9th Cir. 1977). Defendant has already received access to the names of potential witnesses in this case in the investigative reports previously provided to him.

24.    <u>Reports of Scientific Tests or Examinations</u>

The United States will comply with its obligations pursuant to Rule 16. At trial, the United States intends to offer testimony of a fingerprint expert to identify Defendant as the person who was previously deported. The United States will provide the qualifications of the experts, if any. The United States will provide a summary of his report when it is available.

25.    <u>Residual Requests</u>

The United States objects to any such request. The United States has and will continue to comply with its discovery obligations.

**IV**

**<u>DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED</u>**

**A.    <u>The Challenge For Failure to Allege All Elements is Without Merit</u>**

1    Defendant argues that the Indictment must be dismissed since it fails to allege either that

2    Defendant has been previously removed subsequent to a conviction or the specific date of his prior

3    removal.  For reasons stated in the case he cites, this argument is without merit.

4    In United States v. Salazar-Lopez, 506 F.3d 748, 752 (9th Cir. 2007), the Ninth Circuit held that

5    Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), bars a defendant convicted under 8 U.S.C. § 1326

6    from having his statutory maximum sentence increased for prior convictions, unless the indictment

7    alleges "the date of the removal, or at least the fact that Salazar-Lopez had been removed after his

8    conviction." Here, the Indictment alleges the fact that Defendant "was removed from the United States

9    subsequent to September 17, 1997." The date alleged establishes the temporal relationship that he was

10   removed after his burglary conviction on September 17, 1997.  Thus, no elements are missing.

11                **B.    The Challenge For Failure to Present All Elements is Without Merit**

12   Defendant challenges the Indictment arguing that the face of the Indictment does not indicate

13   whether the grand jury considered all the facts supporting the deportation element or which (if any)

14   deportation the United States presented to the grand jury.  Defendant begins by assuming that a

15   deportation has the following elements: "(1) that a deportation proceeding occurred as the [the]

16   defendant and as a result, [(2)] a warrant of deportation was issued and [(3)] executed by the removal

17   of the defendant from the United States." United States v. Castillo-Basa, 483 F.3d 890 (9th Cir. 2007).

18   Defendant's first challenge rests on a flawed assumption. The United States is not required to prove to

19   a jury beyond a reasonable doubt the deportation process described in Castillo-Basa.  Rather, the United

20   States need only show physical removal.  United States v. Zepeda-Martinez, 470 F.3d 909, 913 (9th Cir.

21   2006) ("[t]his warrant is sufficient alone to support a finding of removal beyond a reasonable doubt.").

22   Second, as noted previously, the Indictment alleges that Defendant "was removed from the

23   United States subsequent to September 17, 1997." The temporal relationship between Defendant's

24   removal and his conviction is satisfied by this allegation.  Thus, as recognized in Salazar-Lopez, the

25   United States need not allege a specific date of deportation.  Accordingly, Defendant's challenge due

26   to failure to present what is nonessential information to the grand jury should be denied.

27                                        **V**

28                **THE GRAND JURY WAS PROPERLY INSTRUCTED**

1    In addition to challenges previously rejected by the Ninth Circuit, Defendant makes two

2    challenges contentions relating to instructions given to the grand jury during its impanelment by District

3    Judge Larry A. Burns.  Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas,

4    408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the grand jury instructions constitutional,

5    Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so

6    doing rendered them improper warranting dismissal of the Indictment.

7    In making his arguments concerning the instructions Defendant urges this Court to dismiss the

8    Indictment on two separate bases relating to grand jury procedures, both of which were discussed in

9    United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992).  Concerning the first attacked instruction,

10    Defendant urges this Court to dismiss the Indictment by exercising its supervising powers over grand

11    jury procedures.  This is a practice the Supreme Court discourages as Defendant acknowledges, citing

12    United States v. Williams, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness

13    from its constituting court, it should come as no surprise that we have been reluctant to invoke the

14    judicial supervisory power as a basis for prescribing modes of grand jury procedure.").  Isgro reiterated:

15        [A] district court may draw on its supervisory powers to dismiss an indictment.
The supervisory powers doctrine "is premised on the inherent ability of the federal
16    courts to formulate procedural rules not specifically required by the Constitution or
Congress to supervise the administration of justice."  Before it may invoke this power,
17    a court must first find that the defendant is actually prejudiced by the misconduct.
Absent such prejudice-that is, absent "'grave' doubt that the decision to indict was free
18    from the substantial influence of [the misconduct]"-a dismissal is not warranted.

19    974 F.2d at 1094 (citation omitted, emphasis added).  Concerning the second attacked instruction, in an

20    attempt to dodge the holding in Williams, Defendant appears to base his contentions on the Constitution

21    as a reason to dismiss the Indictment.  Concerning that kind of a contention Isgro stated:

22        [A] court may dismiss an indictment if it perceives constitutional error that interferes
with the grand jury's independence and the integrity of the grand jury proceeding.
23    "Constitutional error is found where the 'structural protections of the grand jury have
been so compromised as to render the proceedings fundamentally unfair, allowing the
24    presumption of prejudice' to the defendant."  Constitutional error may also be found "if
[the] defendant can show a history of prosecutorial misconduct that is so systematic and
25    pervasive that it affects the fundamental fairness of the proceeding or if the independence
of the grand jury is substantially infringed."
26

27    974 F.2d at 1094 (citation omitted).

28    The portions of the two relevant instructions approved in Navarro-Vargas were:

You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal.   That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems.   It is entirely proper that you should receive this assistance.   If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"  408 F.3d at 1203 (footnote omitted).  "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law; it receives no briefs or arguments from the parties.   The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'"  Id.

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction, the court stated:

We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution.   The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . .  The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207.  Id.  "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other."  Id.

Any instruction that Assistant United States Attorneys are duty-bound to present evidence that cuts against returning an indictment is directly contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."  (emphasis

added)); see also United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) (" . . . prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury." (citing Williams).

However, the analysis does not stop there. Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal grand jury. As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM").[1]/ Specifically, it appears he is aware of USAM Section 9-11.233 thereof which reads:

> In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

(Emphasis added.)[2]/ This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233 ." (Emphasis added.)[3]/

The fact that Judge Burns' statement contradicts Williams, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant. If "substantial" exculpatory evidence exists, as mandated by the USAM, the evidence should be

---

[1]/ The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/usam/index.html.

[2]/ See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/11mcrm.htm. Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, as the District Judge overseeing the grand jury, he could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

[3]/ See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly, this new section does not bestow any procedural or substantive rights on defendants.

> Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E." See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm.

1   presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career

2   destroyed by an Office of Professional Responsibility investigation. There is nothing wrong with a

3   grand juror inferring that there is no "substantial" exculpatory evidence, or even if some exculpatory

4   evidence were presented, the evidence presented represents the universe of all available exculpatory

5   evidence.

6       Further, just as the instruction language regarding the United States Attorney attacked in

7   Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408

8   F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury

9   concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does

10  not violate the Constitution. In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit

11  while reviewing Williams established that there is nothing in the Constitution which requires a

12  prosecutor to give the person under investigation the right to present anything to the grand jury

13  (including his or her testimony or other exculpatory evidence), and the absence of that information does

14  not require dismissal of the indictment. 974 F.2d at 1096 ("Williams clearly rejects the idea that there

15  exists a right to such 'fair' or 'objective' grand jury deliberations."). Therefore, while the "duty-bound"

16  statement was an interesting tidbit of information, it was unnecessary in terms of advising the grand

17  jurors of their rights and responsibilities, and does not render the instructions unconstitutional. The

18  grand jurors were instructed by Judge Burns that, in essence, the United Sates Attorneys are "good

19  guys," which was authorized by Navarro-Vargas. 408 F.3d at 1206-07 ("laudatory comments . . . not

20  vouching for the prosecutor"). But he also repeatedly "remind[ed] the grand jury that it stands between

21  the government and the accused and is independent," which was also required by Navarro-Vargas. 408

22  F.3d at 1207. In this context, the unnecessary "duty-bound" statement does not render the instructions

23  constitutionally defective requiring dismissal of this Indictment.

24      The "duty bound" statement does not indicate that the "'structural protections of the grand jury

25  have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption

26  of prejudice' to the defendant," and "[the] defendant can[not] show a history of prosecutorial

27  misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding

28

1   or if the independence of the grand jury is substantially infringed." Isgro, 974 F.2d at 1094 (citation

2   omitted).  Therefore, this Indictment, or any other indictment, need not be dismissed.

3   ///

4   ///

5                                                    **VI**

6              **DEFENDANT'S MOTION TO SUPPRESS STATEMENTS SHOULD BE DENIED**

7              Defendant moves to suppress his statements made to Border Patrol while in custody of the

8   Escondido Police Department.  Defendant argues that his statements should be suppressed because he

9   was in custody and subject to incriminating questioning.  First, Defendant's motion should be denied

10  without a hearing since he has filed no declaration.  Second, Defendant's motion should be denied as

11  moot.  The United States will not seek to introduce in its case-in-chief any of Defendant's statements

12  to Senior Patrol Agents Pinckney and Jordan prior to waiver of his Miranda rights.

13            **A.    Defendant's Motion Should Be Denied Without a Hearing**

14            The Court should deny Defendant's motion to suppress without a hearing.  Under Ninth Circuit

15  and Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary

16  hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the

17  granting of Defendant's motion.  United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (where

18  "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer,

19  . . . . the district court was not required to hold an evidentiary hearing").

20            Here, in clear opposition to Local Rule 47.1(g), Defendant has failed to attach a declaration

21  creating an issue of fact regarding Defendant's field admission or post-arrest Miranda waiver.  As such,

22  this Court should deny Defendant's motion to suppress, based on the Statement of Facts attached to the

23  Complaint in this case, that all of Defendant's statements were voluntarily made.

24            **B.    Defendant's Pre-Miranda Statements Should Not Be Suppressed**

25            Defendant argues that his statements made to Border Patrol after to his arrest by the Escondido

26  Police Department required a Miranda warning.  In Miranda v. Arizona, 396 U.S. 868 (1969), the

27  Supreme Court held that under the Fourth Amendment a person must be advised of his rights prior to

28

1    incriminating questioning after custodial arrest. Defendant's argument is without merit. Defendant was

2    not subjected to incriminating questioning while in custody.

3          Detaining a person for routine border questioning is not custodial. <u>See</u> <u>United States v.</u>

4    <u>Galindo-Gallegos</u>, 244 F.3d 728, 731 (9th Cir.), <u>modified by</u> 255 F.3d 1154 (9th Cir. 2001). Consistent

5    with <u>Galindo-Gallegos</u>, Defendant was detained and asked immigration questions. Defendant was

6    apprehended and Officer Holtz had reason to suspect Defendant was an undocumented alien. Border

7    Patrol Agents responded and confirmed Defendant's undocumented status. As such, there is no

8    <u>Miranda</u> violation.

9          **C.    Routine Booking Information**

10          Finally, upon detaining Defendant, Officers and Agents asked Defendant routine booking

11    questions for the purpose of obtaining background biographical information for filling out a personal

12    history report and a booking slip. The Supreme Court has held that routine booking questions

13    reasonably related to law enforcement record keeping concerns are not testimony and are therefore

14    outside the Fifth Amendment privilege that <u>Miranda</u> is designed to protect. <u>See</u> <u>Pennsylvania v. Muniz</u>,

15    496 U.S. 582, 600-602 (1990). "Routine gathering of background biographical data does not constitute

16    interrogation sufficient to trigger constitutional protections." <u>United States v. Perez</u>, 776 F.2d 797, 799

17    (9th Cir. 1985). Citing <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301 (1980), the Ninth Circuit has held that

18    pre-<u>Miranda</u> questions regarding "where and when" a defendant was born "are normal questions

19    'attendant to arrest and custody,' so <u>Miranda</u> is not implicated." <u>United States v. Arellano-Ochoa</u>, 461

20    F.3d 1142, 1146 (9th Cir. 2006) (allowing the defendant's statements where he was charged with being

21    a non-immigrant alien in possession of a firearm). Consistent with <u>Muniz</u> and <u>Perez</u>, the Ninth Circuit

22    has allowed police officers to testify in § 1326 prosecutions about a defendant's statements of alienage

23    taken during the booking process. <u>See</u> <u>United States v. Salgado</u>, 292 F.3d 1169, 1174 (9th Cir. 2002).

24    Defendant's responses to the Officers and Agents' questions therefore are admissible. However, as

25    noted previously, the United States will not seek to introduce Defendant's pre-<u>Miranda</u> statements to

26    the Senior Patrol Agents.

27                                    **VII**

28          **DEFENDANT'S MOTION TO PRECLUDE EVIDENCE SHOULD BE DENIED**

1     Defendant's request to preclude evidence for the United States' alleged failure to comply with

2  discovery obligations is ridiculous.  On January 2, 2008, the United States produced 40 pages and one

3  DVD of discovery.  This production included A-File documents Defendant now seeks to be precluded.

4  On Tuesday, May 27, 2008, the Court directed the United States to produce additional discovery as

5  requested by the defense by the end of the week.  On Thursday, May 29, 2008, defense counsel sent via

6  facsimile a request for additional discovery.  This facsimile was first reviewed on Friday, May 30, 2008.

7  The assigned Assistant United States Attorney responded via a voice mail message indicating the eight

8  categories of items requested could not be gathered, copied, reviewed, redacted, and produced in a single

9  day.  There was no response to this message.  The requested documents were then produced on Tuesday,

10  June 3, 2008.  So, the 52 additional pages of discovery were produced 13 days in advance of June 16,

11  2008, the date upon which Defendant filed his first set of motions.[4/]

12                                          **VIII**

13            **DEFENDANT'S MOTION FOR RECONSIDERATION SHOULD BE DENIED**

14     Defendant requests to review his A-File under Rule 16(e).  As noted previously, Defendant has

15  not shown the A-File is material or that the United States intends to use the entire A-File as an exhibit

16  in its case-in-chief at trial.  Defendant attaches three declarations in an attempt to create materiality.

17  First, Mr. Burns fails to point out that the defendant in United States v. Garcia-Hernandez, 04CR1888-

18  IEG was convicted and his conviction was affirmed on appeal.  Mr. Garcia-Hernandez never introduced

19  any evidence that he applied for permission to reenter the United States.  As in United States v.

20  Rodriguez-Rodriguez, 393 F.3d 849, 856 (9th Cir. 2005), Mr. Garcia-Hernandez' argument about the

21  unreliability of the A-File was merit less.  The documents to which Mr. Burns is referring consisted of

22  the Records of Deportable Alien.  These records document immigration contacts and are completed

23  based upon statements made by an alien.  It should come as no surprise that these documents are so

24  material that Defendant has not even requested them.

25     Second, Ms. Moel's client was also convicted.  Moreover, in United States v. Lua-Bermejo,

26  06CR2515-W, the United States complied with its discovery obligations after receiving a specific

27

28            [4/]The Court also ordered that any supplemental motions be filed by July 7, 2008.  Defendant filed
       his motion on July 8, 2008.  Therefore, this request should not be considered.

1 | request. Consistent with Defendant's request, the United States has already produced "[a]ny documents

2 | and/or applications for admission and/or status in the United States."

3 |       Third, in United States v. Arce-Martinez, 07CR3207-DMS, Ms. Coon's client was successful

4 | in obtaining a request by the United States to dismiss her client's case without prejudice.

5 | Mr. Arce-Martinez' criminal history included a 1991 conviction for violating Cal. Health and Safety

6 | Code § 11379 (transportation of methamphetamine). In his July 1, 1996 deportation hearing, the

7 | immigration judge found that Mr. Arce-Martinez was deportable because he was an aggravated felon

8 | as a result of his § 11379 conviction. However, in Sandoval-Lua v. Gonzales, 499 F.3d 1121, 1124 (9th

9 | Cir. 2007), the Ninth Circuit held that § 11379 is not categorically an aggravated felony as a drug

10 | trafficking offense. At the deportation hearing, the immigration judge possessed the 1991 conviction

11 | records. However, the records did not meet the modified categorical approach. The immigration judge

12 | also did not possess the transcript of the change of plea to confirm that Mr. Arce-Martinez' conviction

13 | was a trafficking offense.

14 |       Next, the immigration judge erroneously advised Mr. Arce-Martinez that he was ineligible for

15 | section 212(c) relief. However, under INS v. St. Cyr, 533 U.S. 289, 320 (2001), section 212(c) relief

16 | was available since his settled expectation at the time of his 1991 guilty plea was that relief was

17 | available.

18 |       Finally, although it may not have been granted, Mr. Arce-Martinez was eligible for section

19 | 212(c) relief. Mr. Arce-Martinez was a lawful permanent resident since 1989 and had seven years of

20 | unrelinquished domicile beginning in 1987. He also could present some equities. His grounds for relief

21 | were consistent with other cases in which a deportation has been held invalid. See United States v.

22 | Ubaldo-Figueroa, 364 F.3d 1042, 1047 (9th Cir. 2004). Thus, he may have had plausible grounds for

23 | relief that were not considered.

24 |       In Ms. Coon's matter, the United States produced Mr. Arce-Martinez' deportation tape. The

25 | deportation tape was the basis for the motion to dismiss due to an invalid deportation.

26 |       Here, the United States will produce Defendant's deportation tape as well. Unlike Mr. Arce-

27 | Martinez, Defendant has a burglary conviction making him ineligible for relief and multiple deportation

28 | orders. Consistent with Defendant's request, the United States has already produced "[a]ny and all

documents relating to Mr. Garcia-Lopez' deportation/removal on or about" April 29, 2007, June 16, 2006, January 27, 2006, October 23, 1998, and December 18, 1989. So, the United States has produced discovery on deportations upon which it will not be relying.

The three declarations do nothing to show that the entire A-File in this case is material requiring review. Consistent with Rule 16, the United States has complied, and will continue to comply, with Defendant's specific discovery requests.

### IX

### **DEFENDANT'S MOTION FOR LEAVE TO FILE FURTHER MOTIONS**

Defendant's motion for leave to file further motions should be denied except to the extent that such motions are based on new discovery.

### X

### **CONCLUSION**

For the foregoing reasons, the United States asks that the Court deny Defendant's motions, except where unopposed, limit further motions to those based on new law or facts.

DATED: July 21, 2008                              Respectfully submitted,

                                                  KAREN P. HEWITT
                                                  United States Attorney

                                                  *s/Christopher M. Alexander*
                                                  CHRISTOPHER M. ALEXANADER

                                                  Assistant United States Attorney
                                                  Attorneys for Plaintiff
                                                  United States of America
                                                  Email: Christopher.M.Alexander@usdoj.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No.   08CR0135-LAB |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **CERTIFICATE OF SERVICE** |
| GUILLERMO GARCIA-LOPEZ, | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, CHRISTOPHER ALEXANDER, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of United States' Response to Defendant's Motions to (1) compel discovery/preserve evidence, (2) various grounds to dismiss the Indictment, (3) suppress statements, (4) preclude evidence, and (5) reconsideration, together with statement of facts, memorandum of points and authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

     1.    Erica Zunkel, Esq.
               Atty for Defendant

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 21, 2008.

*s/Christopher M. Alexander*
CHRISTOPHER M. ALEXANDER