**ERICA K. ZUNKEL**
California State Bar No. 229285
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California  92101-5008
Telephone:  (619) 234-8467
email: erica_zunkel@fd.org

Attorneys for Mr. Garcia-Lopez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY A. BURNS)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 08cr0135-LAB |
| | ) | |
| Plaintiff, | ) | DATE: August 25, 2008 |
| | ) | TIME:  2:00 p.m. |
| v. | ) | |
| | ) | NOTICE OF MOTIONS *IN LIMINE* AND |
| GUILLERMO GARCIA-LOPEZ, | ) | MOTIONS *IN LIMINE* TO: |
| | ) | |
| Defendant. | ) | (1)  PRECLUDE ANY EVIDENCE NOT PRODUCED IN DISCOVERY; |
| | ) | (2)  PRECLUDE 404(b) AND 609 EVIDENCE; |
| | ) | (3)  PRECLUDE DEPORTATION DOCUMENTS AS EVIDENCE OF ALIENAGE; |
| | ) | (4)  COMPEL INSPECTION OF CERTIFIED DOCUMENTS PRE-TRIAL; |
| | ) | (5)  PRECLUDE THE "A-FILE CUSTODIAN" FROM TESTIFYING ABOUT IMMIGRATION PROCEEDINGS; |
| | ) | (6)  PRECLUDE THE "A-FILE CUSTODIAN" FROM TESTIFYING ABOUT DATABASE SEARCHES; |
| | ) | (7)  ALLOW IMPEACHMENT OF ALL HEARSAY DECLARANTS; |
| | ) | (8)  ALLOW ATTORNEY-CONDUCTED VOIR DIRE; |
| | ) | (9)  SUPPRESS ANY DEPORTATION HEARING AUDIOTAPE OR TRANSCRIPT; |
| | ) | (10)  PRECLUDE INTRODUCTION OF EVIDENCE OF A REINSTATEMENT OF DEPORTATION; AND |
| | ) | (11)  GRANT LEAVE TO FILE FURTHER MOTIONS. |

TO:       KAREN P. HEWITT, UNITED STATES ATTORNEY; AND
          CHRISTOPHER ALEXANDER, ASSISTANT UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE that on August 25, 2008 at 9:00 a.m. or as soon thereafter as counsel may be heard, the defendant, Guillermo Garcia-Lopez, by and through his counsel, Erica K. Zunkel and Federal Defenders of San Diego, Inc., will ask this Court to enter an order granting the following motions.

## MOTIONS

Guillermo Garcia-Lopez, the accused in this case, by and through his attorneys, Erica K. Zunkel, and Federal Defenders of San Diego, Inc., pursuant to the United States Constitution, Federal Rules of Criminal Procedure, and all other applicable statutes, case law and local rules, hereby moves this Court for an Order:

1) Preclude Evidence Not Produced In Discovery;

2) Preclude 404(b) and 609 Evidence;

3) Preclude Deportation Documents as Evidence of Alienage;

4) Compel Inspection of Certified Documents Pre-Trial;

5) Preclude the "A-File Custodian" from Testifying about Immigration Proceedings;

6) Preclude the "A-File Custodian" from Testifying about Database Searches;

7) Allow Impeachment of All Hearsay Declarants;

8) Allow Attorney-Conducted Voir Dire;

9) Suppress Any Deportation Hearing Audiotape or Transcript;

10) Preclude Introduction of Evidence of Reinstatements; and

11) Grant Leave to File Further Motions.

These motions are based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, and any and all other materials that may come to this Court's attention at the time of the hearing on these motions.

                                        Respectfully submitted,


                                        /s/ Erica K. Zunkel
Dated: August 18, 2008                  **ERICA K. ZUNKEL**
                                        Federal Defenders of San Diego, Inc.
                                        Attorneys for Mr. Garcia-Lopez

**ERICA K. ZUNKEL**
California State Bar No. 229285
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
email: erica_zunkel@fd.org

Attorneys for Mr. Garcia-Lopez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY A. BURNS)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 08CR0135-LAB |
| Plaintiff, | ) ) | DATE: August 25, 2008 |
| v. | ) ) | TIME: 2:00 p.m. |
| GUILLERMO GARCIA-LOPEZ, | ) ) | STATEMENT OF FACTS AND |
| Defendant. | ) ) | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF |
| | ) ) | DEFENDANT'S MOTIONS *IN LIMINE* |

**I.**

**STATEMENT OF FACTS**

Mr. Garcia-Lopez hereby incorporates by reference his previously filed statement of facts and adds the following. At the motion hearing on July 28, 2008, defense counsel for Mr. Garcia-Lopez asked that any outstanding discovery be produced as soon as possible, specifically outstanding audiotapes of alleged deportations/removals. The Court agreed and stated that if the tapes were not produced in the next few weeks, they would be kept out. Mr. Garcia-Lopez has not yet received any audiotape of the 2006 removal attributed to him. Just today, Mr. Garcia-Lopez received discovery from the government related to his arrest in Escondido that he requested in his original motions and again at the motion hearing. These motions follow.

/ / /

/ / /

## II.

### PRECLUDE ANY EVIDENCE NOT PRODUCED IN DISCOVERY

The government has had over seven months to turn over all relevant discovery to Mr. Garcia-Lopez and has failed to do so. Thus, pursuant to Rule 16, Mr. Garcia-Lopez requests that the Court preclude the government from introducing any evidence or making any arguments based on discovery not produced thus far, including any evidence relating to his arrest in Escondido. See Rule 16(d)(2)(D) ("If a party fails to comply with this rule, the court may ... prohibit that party from introducing the undisclosed evidence.").

## III.

### THIS COURT SHOULD PRECLUDE ANY EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(B) AND 609

The Court should preclude the Government from introducing any Rule 404(b) or Rule 609 evidence. The Court should preclude 404(b) evidence because the Government has failed to provide any notice, and the Government has not established that such evidence is relevant. All Rule 609 evidence should be precluded because it is irrelevant, and any probative value is substantially outweighed by its prejudicial effect.

**A.    This Court Should Exclude All 404(b) Evidence.**

This Court should exclude all 404(b) evidence because the Government has failed to comply with its obligation to provide timely notice. Rule 404(b) requires that the Government provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce. FED. R. EVID. 404(b). The notice requirement is triggered when timely requested by the defendant. United States v. Vega, 188 F.3d 1150, 1154 (9th Cir. 1999). Here, Mr. Garcia-Lopez requested notice in his October 2, 2007 motion for discovery. To date, government counsel has not indicated that he intends to offer such evidence, therefore, the Government should be precluded from introducing such evidence at trial.

Moreover, the Government carries the burden of showing how any other acts evidence is relevant to one or more issues in the case; therefore, "it must articulate precisely *the evidential hypothesis* by which a fact of consequence may be inferred from the other acts evidence." United States v, Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (citing United States v. Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir. 1979)) (emphasis added); accord United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993). Because the

1  Government has not presented an evidential hypothesis, this evidence must be excluded under Federal Rules

2  of Evidence 401, 404(b) and 403.

3  **B.      This Court Should Exclude All 609 Evidence.**

4             Under Rule 609, evidence of prior convictions is usually admissible only under certain

5  circumstances, and in the discretion of the Court.  Federal Rule of Evidence 609(a)(1) restricts impeachment

6  of the accused by evidence of a prior conviction to only those offenses for which the Court determines that

7  the probative value outweighs its prejudicial effect to the accused.  The Government should be precluded

8  from introducing any evidence of prior convictions because it is irrelevant under Federal Rule of Evidence

9  401, prejudicial under Federal Rule of Evidence 403, and the government has not provided any notice of its

10  intent to introduce this evidence.

11             To the extent that this Court rules that Mr. Garcia-Lopez's alleged prior convictions are admissible

12  under Federal Rule of Evidence 609, this Court should redact any documents referencing, and preclude the

13  prosecutor from referring to, the offense and specific facts of any crime for which Mr. Garcia-Lopez was

14  convicted.  Such information would be more prejudicial than probative of Mr. Garcia-Lopez's guilt of the

15  charged offense.

16                                              **IV.**

17              **THE GOVERNMENT MUST BE PRECLUDED FROM USING
              DEPORTATION DOCUMENTS AS EVIDENCE OF ALIENAGE**

18

19  **A.      The Warrant of Removal and the Order from an Immigration Judge Are Only
        Admissible to Establish the Fact of the Removal, *Not* Alienage.**

20

21             Mr. Garcia-Lopez expects that the Government will seek to introduce a warrant of deportation and

22  a order from an immigration judge to establish the fact of his alleged deportation.  These two documents are

23  admissible *only* to establish the fact of the deportation.  See, e.g., United States v. Contreras, 63 F.3d 852,

24  857 (9th Cir. 1995); United States v. Hernandez-Rojas, 617 F.2d 533, 535-36 (9th Cir. 1980).  Neither the

25  warrant of removal, nor the order from an immigration judge, reflect the "objective, ministerial fact" of

26  alienage; accordingly, neither are admissible under Federal Rule of Evidence 803(8)(B) to establish the fact

27  of alienage.

28  / / /

1    Both the warrant of removal and the order from an immigration judge reflect the ministerial fact of

2  the *removal*, not Mr. Garcia-Lopez's alleged alienage.  As the Ninth Circuit has explained:

3        **Clearly it would be improper for the government to rely on factual**
        **findings from a deportation hearing to prove an element of the crime of**
4        **illegal reentry, as the burden of proof in a criminal proceeding requires**
        **a greater showing by the government than in an administrative hearing.**
5        The use of a deportation order to prove the element of alienage would allow
        the government to skirt around the more stringent requirements of a criminal
6        proceeding by relying on that factual finding from the INS proceeding.  To
        put it more simply, the government would demonstrate that Medina is an
7        alien by showing that the INS found that he was an alien.

8  United States v. Medina, 236 F.3d 1028, 1030, 1031 (9th Cir. 2001) (emphasis added).  Simply put, alienage

9  is not a fact that is observed; it is a fact that is "found" by an immigration official--in this case without the

10  benefit of a hearing, and the order of deportation reflects the quintessential "factual finding" rendered after

11  an administrative hearing.  Likewise, the warrant of removal reflects only that a field office director

12  concluded that Mr. Garcia-Lopez was an alien and that Mr. Garcia-Lopez may have been removed from the

13  United States—it has no bearing whatsoever on the fact of alienage.  Accordingly, the warrant of removal

14  and order from an immigration judge are not admissible under Federal Rule of Evidence 803(8) or Federal

15  Rule of Evidence 401 to establish the fact of alienage.[1]

16    Finally, to the extent that this Court finds that these documents are relevant under Federal Rule of

17  Evidence 401, these documents should still be excluded pursuant to Federal Rule of Evidence 403, because

18  their probative value is substantially outweighed by their prejudicial effect.  Both the warrant of removal and

19  order from an immigration judge make reference to an "alien;" even more troubling, in the context of these

20

21  [1] In United States v. Hernandez-Herrera, 273 F.3d 1213, 1217-18 (9th Cir. 2001), the Ninth Circuit stated

22  summarily that A-File documents are admissible under Federal Rule of Evidence 803(8)(B) to establish the
    fact of alienage.  Because the Court failed to set forth any reasoned discussion, failed to discuss the decision

23  in Medina, and did not specify which documents from the A-File were admitted in Mr. Hernandez-Herrera's
    case, see id., this case is not binding authority, and this Court must still address this issue.  See, e.g., Miranda

24  B. v. Kitzhaber, 328 F.3d 1181, 1186 (9th Cir. 2003) (per curiam) (requiring "reasoned consideration in a
    published opinion" for a "ruling [to] becom[e] the law of the circuit"); United States v. Collicott, 92 F.2d

25  973, 980 n.4 (9th Cir. 1996) (holding that prior Ninth Circuit case is not binding "in the absence of reasoned

26  analysis and analogous facts").  In any event, Hernandez-Herrera never held that these documents were
    admissible under Federal Rules of Evidence 401 or 403, or the Fifth and Sixth Amendments.  See Webster

27  v. Fall, 266 U.S. 507, 512 (1925) (stating that "[q]uestions which merely lurk in the record, neither brought
    to the attention of the court nor ruled upon are not to be considered as having been so decided as to

28  constitute precedent").

1   documents, the term "alien" is associated *with* Mr. Garcia-Lopez, who presumably is the "alien" to which

2   the documents refer.  In the face of these quasi-official Government documents proclaiming Mr. Garcia-

3   Lopez to be an "alien," there is a real danger that jurors will no longer see the alienage element of 8 U.S.C.

4   § 1326 as an open question that the Government must prove beyond a reasonable doubt.

5   Should the Court nonetheless admit these documents, Mr. Garcia-Lopez requests that this Court

6   instruct the jury, pursuant to Federal Rule of Evidence 105, that it may only consider the warrant of removal

7   and order from an immigration judge to establish the fact of the deportation and for no other purpose, and

8   that these documents do not, in and of themselves, establish the fact of alienage.  Mr. Garcia-Lopez further

9   requests that this Court redact these documents to exclude any reference to his alleged alienage.

10  **B.    None of the Other A-File Documents Are Admissible Under Any Rule of Evidence.**

11  Mr. Garcia-Lopez anticipates that the Government may seek to admit other documents from the A-

12  File, including the order to show cause why a person should not be deported and warnings regarding the

13  possible penalties for reentry.  None of these documents from the A-File are admissible to establish any

14  matter at issue in this trial.  All documents from the A-File—except the warrant of deportation and the order

15  of deportation discussed previously—are irrelevant under Federal Rule of Evidence 401; more prejudicial

16  than probative, cumulative, and a waste of time under Federal Rule of Evidence 403; and inadmissible

17  hearsay under Federal Rule of Evidence 803(8).

18  **1.    The Notice to Appear Is Inadmissible.**

19  The Notice to Appear is inadmissible under Federal Rules of Evidence 401, 403, and 803(8).  The

20  Notice to Appear is a document that provides an alien with *notice* of the grounds for removal.  It does not

21  record the "objective, ministerial fact" of alienage or of a deportation any more than an indictment provides

22  an objective observation that a person committed a crime.  This document is nothing more than an

23  *accusation* that the Government must prove in an immigration proceeding.

24  **2.    The Warnings of Possible Penalties Is Inadmissible.**

25  Likewise, the warning of possible penalties is inadmissible under Federal Rules of Evidence 401,

26  403, and 803(8).  The warning of possible penalties contains boilerplate statements (drafted by the former

27  INS) regarding the penal consequences to an alien who illegally reenters the country.  It has no bearing on

28  whether a defendant is in fact an alien, and it makes no fact at issue in this case more or less probable.  This

1  document contains inadmissible hearsay, and is completely irrelevant.  It is also more prejudicial than

2  probative.  Among other things, given the serious consequences listed on the warning of possible penalties,

3  jurors may be led to speculate what this defendant did to be subject to such harsh penalties upon reentry;

4  needless to say, such speculation is completely irrelevant to the charge at hand, and could be severely

5  prejudicial.  Accordingly, the warnings of possible penalties also must be excluded at trial.

6         **3.    If This Court Finds That These Documents Are Somehow Relevant,**
           **They Are Not Admissible to Establish Alienage; Thus, This Court**
7         **Should Provide the Jury With a Limiting Instruction.**

8         To the extent that this Court finds any A-File document relevant to some point, the document is not

9  admissible to establish Mr. Garcia-Lopez's alienage.  Accordingly, this Court should redact these documents

10  to exclude all references to alienage.  Additionally, the Court should instruct the jury as to the limited value

11  of such documents pursuant to Federal Rule of Evidence 105.

12  **C.    This Court Must Preclude the Admission of the A-File Documents to Establish Alienage**
        **to Protect Mr. Garcia-Lopez's Constitutional Rights.**
13

14        Finally, this Court must preclude the admission of A-File documents to establish the fact of alienage

15  to protect Mr. Garcia-Lopez's rights to confrontation of witnesses and to a jury trial based upon proof beyond

16  a reasonable doubt—rights guaranteed by the Fifth and Sixth Amendments.  Because the right to

17  confrontation is not applicable in immigration proceedings, the Government may have met its burden of

18  proving alienage in such a proceeding based upon otherwise inadmissible hearsay.  Cunanan v. INS, 856

19  F.2d 1373, 1374 (9th Cir. 1988).  Similarly, because a criminal defendant such as Mr. Garcia-Lopez never

20  has the opportunity to confront those witnesses upon whose hearsay statements the immigration judge may

21  have relied, the admission of the (former) INS' evaluation of alienage deprives a defendant of his right to

22  confront the witnesses against him.

23        Additionally, in immigration proceedings, the Government need only establish alienage by clear and

24  convincing evidence.  Murphy v. INS, 54 F.3d 605, 608-10 (9th Cir. 1995).  Once the Government has

25  established a person's foreign birth, the burden shifts to the purported alien to establish, by a preponderance

26  of the evidence, that he falls within one of the statutory provisions for derivative citizenship.  Id.  Given the

27  lower burden of proof and the shifting presumption, the admission of A-File documents against a criminal

28  / / /

1  defendant to establish the fact of alienage has the effect of lowering the Government's burden of proving

2  alienage in the criminal trial.

3         Finally, a determination of alienage by a quasi-judicial decision-maker represents powerful evidence

4  of an element of the offense, and it creates a substantial risk that the jury will give this evidence undue

5  weight or conclusive effect.  Cf. Nipper v. Snipes, 7 F.3d 415, 418 (4th Cir. 1993) (internal quotations

6  omitted) (stating "judicial findings of fact 'present a rare case where, by virtue of there having been made

7  by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair

8  prejudice'"); Federal Rules of Evidence 803(22), Advisory Committee Note (observing that "it seems safe

9  to assume that the jury will give [evidence of a criminal judgment] substantial effect unless defendant offers

10  a satisfactory explanation").  The Government's introduction of a Government agency's finding of alienage

11  to establish the fact of alienage carries with it the imprimatur of governmental, if not judicial, approval.  The

12  admission of this factual finding undermines a defendant's constitutional right to a reliable jury finding of

13  an essential element.

14         In sum, because the A-File documents are generated by the Government without the constitutional

15  safeguards surrounding criminal proceedings, it is unconscionable and constitutionally untenable to

16  authorize their admission, as evidence of alienage, in a criminal prosecution.  This Court should exclude

17  these documents in their entirety; or, to the extent the Court finds that these documents are admissible to

18  prove some other fact, it should redact these documents to exclude reference to Mr. Garcia-Lopez's alienage,

19  and instruct the jury as to the documents' limited relevance.

20                                                    **V.**

21                       **THIS COURT SHOULD COMPEL INSPECTION OF**
                        **CERTIFIED DOCUMENTS PRE-TRIAL**

22

23         While Mr. Garcia-Lopez objects to the introduction of any A-File documents, it is clear that no

24  public record can be introduced unless certified.  While the defense has received photocopies of several

25  documents in discovery, it has not received copies of any alleged certifications.  Typically, these simply

26  appear in the middle of trial.  Defense counsel requests an opportunity to inspect any alleged certifications

27  pre-trial, so that any issues can be dealt with in a timely and appropriate way.

28  / / /

# VI.

## THIS COURT SHOULD PRECLUDE THE "A-FILE CUSTODIAN" FROM TESTIFYING ABOUT IMMIGRATION PROCEEDINGS

Under the Fifth and Sixth Amendments, a defendant has a constitutional right to a fair trial and to confront witnesses. Additionally, evidence must be relevant and not create confusion, or be prejudicial. FED. R. EVID. 401, 403. Finally, no lay witness is permitted to offer an opinion or testify about specialized knowledge. FED. R. EVID. 702; United States v. Figueroa-Lopez, 125 F.3d 1241, 1245 (9th Cir. 1997) (expert opinion need not be based upon highly technical knowledge; it may be based upon knowledge which would be "unfamiliar" to "the ordinary juror").

In this case, defense counsel expects that the Government will call the "A-File custodian" to establish the foundation for the admission of selected documents from Mr. Garcia-Lopez's A-File. It is also expected that the Government will ask the "A-File custodian" how immigration proceedings work and what occurs when an individual is physically deported. Such testimony is inadmissible under Federal Rules of Evidence 401, 403, 702, 802, and its admission would violate Mr. Garcia-Lopez's rights to a fair trial and to confront witnesses under the Fifth and Sixth Amendments. For example, it is unlikely that the "A-File custodian" has participated in deportation proceedings as either an immigration judge, an immigration attorney, a deportation enforcement officer, or a deportee; thus, he or she would not be testifying from his or her own personal knowledge, but rather from the hearsay statements of other people who were not presented by the Government for cross-examination by Mr. Garcia-Lopez. Accordingly, this Court should preclude the "A-File custodian" from testifying about how immigration proceedings work and about the significance of documents related to those proceedings. Rather, assuming the Court finds the A-File documents admissible despite Mr. Garcia-Lopez's arguments to the contrary, this Court should limit the "A-File custodian's" testimony to laying a foundation for the admission of the A-File documents—and only then to the extent that the "A-File custodian" has the personal knowledge necessary to lay that foundation.

/ / /

/ / /

/ / /

/ / /

# VII.

## THIS COURT SHOULD PRECLUDE THE "A-FILE CUSTODIAN" FROM TESTIFYING ABOUT SEARCHING DATABASES FOR PERMISSION TO REENTER

Counsel anticipate that the Government will seek to establish, through the "A-File custodian," that Mr. Garcia-Lopez lacked permission to reapply for admission to the United States. Typically, this consists of the agent's explaining that she searched two databases and the A-File for a so-called "I-212" form by which an alien can apply for permission to reapply for admission to the United States, and found none. Such testimony is inadmissible under Federal Rules of Evidence 401, 403, 702, 802, 1002, and its admission would violate Mr. Garcia-Lopez's rights to a fair trial and to confront witnesses under the Fifth and Sixth Amendments.

The best evidence rule provides that the **original** of a "writing, recording, or photograph" is required to prove the contents thereof. FED. R. EVID. 1002. A writing or recording includes a "mechanical or electronic recording" or "other form of data compilation." FED. R. EVID. 1001(1).

> An "original" of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it . . .. If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an "original."

FED. R. EVID. 1001(3).

In United States v. Bennett, 363 F.3d 947 (9th Cir. 2004), a case out of this district, the defendant was charged with importation of marijuana and possession with intent to distribute. The agent testified that the boat, which was found in United States' waters, had traveled into the United States from Mexico, based on data the agent saw on the ship's global positioning system. The Court found that the best evidence rule applies in cases, like this one, "when a witness seeks to testify about the contents of a writing, recording or photograph without producing the physical item itself-particularly when the witness was not privy to the events those contents describe." Id. at 953 (citing FED. R. EVID. 1002 Advisory Committee's note). The Ninth Circuit held that, based on the best evidence rule, the district court committed reversible error by allowing the introduction of this testimony. Id. at 956.

Here, it is anticipated that the Government will seek to establish that an I-212 form was not submitted, based on an agent's alleged review of data contained on a Government database. Under Rule

1002, however, the best evidence is the database itself, or a report generated from the database, not an

agent's testimony.  Therefore, the introduction of this testimony is violative of the Rule 1002.

Moreover, as explained previously, under the Fifth and Sixth Amendments, a defendant has a

constitutional right to a fair trial and to confront witnesses.  Additionally, evidence must be relevant and not

create confusion or be prejudicial.  FED. R. EVID. 401, 403.  Finally, no lay witness is permitted to offer an

opinion or testify about specialized knowledge.  FED. R. EVID. 702; United States v. Figueroa-Lopez, 125

F.3d 1241, 1245 (9th Cir. 1997) (expert opinion need not be based upon highly technical knowledge; it may

be based upon knowledge which would be "unfamiliar" to "the ordinary juror").

The "A-File custodian's" testimony regarding database searches violates these rights on several

levels.  For example, it is unlikely that the "A-File custodian" has himself or herself input the information

he or she allegedly searches for into the databases that he or she testifies about; rather, he or she is testifying

about what other persons have input (or failed to input).  Accordingly, the "A-File custodian" has no

personal knowledge whatsoever regarding why information regarding Mr. Garcia-Lopez does or does not

appear in these systems, but is instead testifying from the hearsay statements of other people who were not

presented by the Government for cross-examination by Mr. Garcia-Lopez.

Equally troubling, the "A-File custodian" is not a database or immigration expert, and it is expected

that the Government will not qualify the "A-File custodian" as an expert in this regard.  Nor will the

Government provide the defense with expert notice as required by Federal Rule of Evidence 702.  Yet, it

is clear that searching complex Government databases for specialized information reflecting legally-complex

immigration procedures requires specialized knowledge far outside the ken of a lay witness.  Finally, the "A-

File custodian's" testimony regarding database searches yielding no evidence of permission to reapply for

admission can only serve to confuse the jury and prejudice Mr. Garcia-Lopez.  By allowing the "A-File

custodian" to testify in a conclusory manner regarding searches she is not qualified to perform, this Court

virtually ensures that the jury will give the "A-File custodian's" testimony far more weight than it is due.

/ / /

/ / /

/ / /

/ / /

# VIII.

## MR. GARCIA-LOPEZ MUST BE GIVEN THE OPPORTUNITY TO ATTACK THE CREDIBILITY OF THE HEARSAY DECLARANT

Under the Federal Rules of Evidence and the Fifth and Sixth Amendments to the Constitution, Mr. Garcia-Lopez must be given the opportunity to attack the credibility of all hearsay declarants. Federal Rule of Evidence 806, provides:

> When a hearsay statement, or a statement defined in Rule 801(d)(2)(C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination.

It is anticipated that the Government will attempt to introduce hearsay evidence (*e.g.*, documents, or the lack of documents, from Mr. Garcia-Lopez's A-File) under a theory that the evidence is admissible under FRE 803(6) ("Records of Regularly Conducted Activity") and 803(7) ("Absence of Entry in Records Kept in Accordance With the Provisions of Paragraph (6)"). The declarant in the context of Rules 803(6) and 803(7) is the business or organization itself (*i.e.*, the Department of Homeland Security ["DHS"] (and its predecessor in interest the Immigration and Naturalization Service ["INS"]). If the Government seeks to introduce hearsay evidence on the basis of Rule 803(6) or 803(7), then Mr. Garcia-Lopez must be given the opportunity to attack the credibility of the hearsay declarant (*i.e.*, the DHS or INS). The types of impeachment include, but are not limited to, reputation and prior inconsistent statements. See FED. R. EVID. 608; FED. R. EVID. 613(b); United States v. Moody, 903 F.2d 321, 328-29 (5th Cir. 1990). The failure to allow Mr. Garcia-Lopez the opportunity to impeach the credibility of the hearsay declarant is reversible error and a violation of his Sixth Amendment right to confrontation and his Fifth Amendment right to due process. See Moody, 903 F.2d at 329; see also United States v. Wali, 860 F.2d 588 (3d Cir. 1988).[2]

---

[2] United States v. Rodriguez-Rodriguez, 393 F.3d 849 (9th Cir. 2005), is not to the contrary. In Rodriguez-Rodriguez, the Ninth Circuit incorrectly determined that the trial court's refusal to allow cross-examination regarding the record keeping practices of the INS did not violate the defendant's rights under the

1

## IX.

2

## THIS COURT SHOULD ALLOW ATTORNEY-CONDUCTED VOIR-DIRE

3    Pursuant to Rule 24(a), Federal Rules of Criminal Procedure, to provide effective assistance of

4    counsel and to exercise Mr. Garcia-Lopez right to trial by an impartial jury, defense counsel requests the

5    opportunity to personally voir dire the prospective members of the jury.

6

## X.

7

## THIS COURT SHOULD SUPPRESS ANY DEPORTATION HEARING AUDIOTAPE OR TRANSCRIPT

8

9    The Court must exclude any deportation hearing audiotape or transcript because they would contain

10    un-Mirandized statements made by Mr. Garcia-Lopez in response to custodial interrogation.  Questions

11    asked in a custodial setting constitute interrogation if, under all the circumstances, the questions are

12    "reasonably likely to elicit an incriminating response from the suspect." United States v. Booth, 669 F.2d

13    1231, 1237 (9th Cir. 1982)(citing Rhode Island v. Innis, 446 U.S. 291, 301 (1980)).  In Mathis v. United

14    States, 391 U.S. 1 (1968), the Supreme Court held that the defendant's statements to a revenue agent who

15    was conducting a routine tax investigation were the product of custodial interrogation within the meaning

16    of Miranda despite the fact that the agent's questioning was part of the routine tax investigation where no

17    criminal proceedings could have even been brought and the defendant was in jail on an entirely separate

18    offense. Id. at 4. The Court stated that "[t]hese differences are too minor and shadowy to justify a departure

19    from the well-considered conclusions of Miranda with reference to warnings to be given to a person held

20    in custody." Id.

21    In the immigration context, this Court has stated: "[i]f civil investigations by the INS were excluded

22    from the Miranda rule, INS agents could evade that rule by labeling all investigations as civil. Civil as well

23    as criminal interrogation of in-custody defendants by INS investigators should generally be accompanied

24    by the Miranda warnings." United States v. Mata-Abundiz, 717 F.2d 1277, 1279 (9th Cir. 1983). In Mata-

25    Abundiz, an INS investigator interviewed the defendant at a local jail, where he was being held on state

26

27    _____

28    Confrontation Clause.  Here, the proposed introduction of testimony is premised on the theory of impeachment of the hearsay declarant.  Thus, Rodriguez-Rodriguez is inapplicable.

charges, as part of a routine civil investigation without a prior Miranda advisement. In a subsequent federal prosecution for possession of a firearm by an alien, the district court permitted the government to introduce the defendant's statement to the INS investigator concerning his Mexican citizenship. This Court reversed the defendant's conviction recognizing that "the investigator cannot control the constitutional question by placing a 'civil' label on the investigation." Id. at 1280.

Moreover, the Ninth Circuit in Mata-Abundiz rejected the government's argument that the questioning fell within the exception to the Miranda requirements for routine background questioning attendant to arrest and booking. See United States v. Booth, 669 F.2d at 1237-38. In Booth, the court of appeals stated: "Ordinarily, the routine gathering of background, biographical data will not constitute interrogation. Yet we recognize the potential for abuse by law enforcement officers who might, under the guise of seeking 'objective' or 'neutral' information, deliberately elicit an incriminating statement from a suspect." Booth, 669 F.2d at 1238. The Court applied this objective test to Mata-Abundiz and found that the "background questions" related directly to an element of the offense to which the defendant was suspected and the questions were likely to elicit an incriminating response. Mata-Abundiz, 717 F.2d at 1280.

Like the questioning in Mathis and Mata-Abundiz, the questioning by the immigration judge in this case was "reasonably likely to elicit an incriminating response" within the meaning of Booth. All of Mr. Garcia-Lopez's statements were made in response to direct questioning by government officials. The questioning concerned Mr. Garcia-Lopez's place of birth, citizenship, and manner of entry into the United States. Federal law provides for criminal penalties to aliens who illegally enter the United States, see 8 U.S.C. §1325, and to aliens who illegally reenter the United States following deportation, see 8 U.S.C. § 1326.

In United States v. Solano-Godines, 120 F.3d 957, 961 (9th Cir. 1997), the government brought criminal charges against the defendant, Mr. Solano, for illegal reentry after a deportation. Id. at 959. Two years before, Mr. Solano appeared at a civil deportation hearing at which he made statements about his place of birth and citizenship. Id. Mr. Solano was not given Miranda warnings prior to making these statements. Id. Prior to trial, Mr. Solano filed a motion to suppress the statements at his deportation hearing. Id. at 960. The district court denied the motion and Mr. Solano entered a conditional plea agreement. Id. On appeal, the Ninth Circuit held that Miranda warnings were not required in that case because the immigration judge

1   "could not be expected to anticipate that two years later Solano would illegally reenter the United States and

2   that his responses to questions at his civil deportation hearing might incriminate him in a prosecution for

3   this future crime." Id. at 962.

4       The Ninth Circuit's holding and reasoning in Solano-Godines is inapplicable to this case.  In

5   particular, any statements made at any immigration hearings *after* he had already been previously deported

6   or removed from the United States should be excluded because Mr. Garcia-Lopez's responses to the

7   immigration judge could have subjected him to criminal prosecution at that time, not some unknown time

8   in the future.  For that reason, the immigration judge should have advised him of his rights under Miranda.

9   Because Mr. Garcia-Lopez's admission were made without the benefit of Miranda warnings, and because

10  he was affirmatively misled as to the consequence of making statements, his statements at the deportation

11  hearing must be excluded.  See United States v. Alderete-Deras, 743 F.2d 645, 648 (9th Cir. 1984) (noting

12  that the lack of Miranda warnings at a civil deportation hearing might render statements made at the hearing

13  inadmissible in a subsequent criminal trial).

## XI.

## THE GOVERNMENT MUST BE PRECLUDED FROM INTRODUCING EVIDENCE OF A REINSTATEMENT OF DEPORTATION

17      Mr. Garcia-Lopez is aware that his position on this issue has been rejected by the panel's opinion

18  in United States v. Diaz-Luevano, 494 F.3d 1159, 1162 (9th Cir. 2007) (per curiam), which held that the

19  holding in Morales-Izquierdo v. Gonzalez, 486 F.3d 484 (9th Cir. 2007) (en banc), did not overrule United

20  States v. Luna-Madellaga, 315 F.3d 1224 (9th Cir. 2003).  Nonetheless, Mr. Garcia-Lopez believes that the

21  Diaz-Luevano panel was an incorrect application of the Ninth Circuit's recent en banc decision in Morales-

22  Izquierdo v. Gonzales, 486 F.3d 484 (9th Cir. 2007) (en banc).

23      Morales-Izquierdo reasoned "that reinstatement and removal are placed in different sections, which

24  logically can be understood as indicating a congressional intention to treat reinstatement determinations

25  differently from first-instance determinations of removability."  See Morales-Izquierdo, 486 F.3d at 490.

26  (quotation marks omitted).  Because "Congress placed reinstatement in a separate section from removal

27  suggests that reinstatement is a separate procedure, not a species of removal."  Id.  The en banc panel

28  concluded that "Congress intended reinstatement to be a different and far more summary procedure than

1    removal." Id.; see also United States v. Luna-Madellaga, 315 F.3d 1224, 1231 (9th Cir. 2003)(Thomas, J.,

2    dissenting) (stating that the "reinstatement process neither issues an order of removal nor considers new

3    evidence that occurred after the date of the original order."). Put simply, Morales-Izquierdo held "Congress

4    did not consider removal and reinstatement to be equivalent." Id. In fact, Morales-Izquierdo specifically

5    rejected the notion that a reinstatement can result in new criminal penalties: "[t]he reinstatement order

6    imposes no civil or criminal penalties." See id. at 498. See also Luna-Madellaga, 315 F.3d at 1231-32

7    (Thomas, J., dissenting) (explaining why a contrary result would be constitutionally doubtful).

8         Moreover, as the Ninth Circuit recently reiterated, and the government conceded, under section 1326,

9    "to meet its burden of proof of a prior deportation, 'the government ... needs to prove that a deportation

10   proceeding actually occurred with the end result of [the defendant] being deported.'" United States v.

11   Castillo-Basa, 483 F.3d 890, 901 n.8 (9th Cir. 2007) (quoting United States v. Medina, 236 F.3d 1028, 1031

12   (9th Cir. 2001)). To prove previous deportation ... "the government must establish ... that a deportation

13   proceeding occurred as to [the] defendant and as a result, ..., a warrant of deportation was issued and ...

14   executed by the removal of the defendant from the United States." Id. at 898 (brackets in original). Castillo-

15   Basa and Medina thus define the "immigration term of art" posited by Judge Thomas in his Luna-Madellaga

16   dissent. Therefore, the government should not be permitted to admit evidence of any reinstatements.

17                                            **XII.**

18                    **REQUEST FOR LEAVE TO FILE FURTHER MOTIONS**

19         As new information comes to light, the defense may find it necessary to file further motions.

20   Therefore, defense counsel requests the opportunity to file further motions based upon information gained

21   from any further discovery.

22                                            **XIII.**

23                                        **CONCLUSION**

24         For the reasons stated above, Mr. Garcia-Lopez moves this Court to grant his motions.

25                                    Respectfully submitted,

26

27   Dated: August 18, 2008          /s/ Erica K. Zunkel
                                      **ERICA K. ZUNKEL**
                                      Federal Defenders of San Diego, Inc.
28                                    Attorneys for Mr. Garcia-Lopez

1  **ERICA K. ZUNKEL**
   California State Bar No. 229285
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, CA 92101-5008
   (619) 234-8467/Fax: (619) 687-2666
4  E-Mail: erica_zunkel@fd.org

5  Attorneys for Guillermo Garcia-Lopez

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10                    **(HONORABLE LARRY A. BURNS)**

11  UNITED STATES OF AMERICA,          )   Case No. 08CR0135-LAB
                                       )
12            Plaintiff,               )
                                       )
13  v.                                 )   **CERTIFICATE OF SERVICE**
                                       )
14  GUILLERMO GARCIA-LOPEZ,            )
                                       )
15            Defendant.               )
    _____)

16

17        Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of her

18  information and belief, and that a copy of the foregoing document has been served this day upon:

19                    Christopher Michael Alexander
        Christopher.M.Alexander@usdoj.gov,maria.richardson@usdoj.gov,efile.dkt.gc1@usdoj.gov
20

21                                    Respectfully submitted,

22

23  DATED:      August 18, 2008              /s/ Erica K. Zunkel
                                             **ERICA K. ZUNKEL**
24                                           Federal Defenders of San Diego, Inc.
                                             Attorneys for Guillermo Garcia-Lopez
25

26

27

28