1  KAREN P. HEWITT
   United States Attorney
2  CHRISTOPHER M. ALEXANDER
   Assistant U.S. Attorney
3  California Bar. No. 201352
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California  92101-8893
5  Telephone: (619) 557-7425 /(619) 235-2757 (Fax)
   Email: Christopher.M.Alexander@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,        )   Case No. 08CR0135-LAB
                                     )
11                    Plaintiff,     )   HEARING DATE:    August 25, 2008
                                     )   TIME:               2:00 p.m.
12           v.                      )
                                     )
13                                   )
    GUILLERMO GARCIA-LOPEZ,          )   **THE UNITED STATES' MOTIONS
14                                   )   IN LIMINE TO:**
                      Defendant.     )
15                                   )   **(A)   ADMIT A-FILE DOCUMENTS;**
                                     )   **(B)   ADMIT LACK OF PERMISSION;**
16                                   )   **(C)   ADMIT TESTIMONY BY A-FILE
                                     )         CUSTODIAN;**
17                                   )   **(D)   ADMIT EXPERT TESTIMONY;**
                                     )   **(E)   PRECLUDE ALL WITNESSES
18                                   )         EXCEPT CASE AGENT;**
                                     )   **(F)   PROHIBIT COLLATERAL
19                                   )         ATTACK ON DEPORTATION;**
                                     )   **(G)   PROHIBIT REFERENCE TO
20                                   )         WHY DEFENDANT REENTERED;**
                                     )   **(H)   PROHIBIT REFERENCE
21                                   )         TO PRIOR RESIDENCY;**
                                     )   **(I)   PROHIBIT REFERENCE TO
22                                   )         PUNISHMENT;**
                                     )   **(J)   PRECLUDE EVIDENCE OF
23                                   )         DURESS AND NECESSITY;**
                                     )   **(K)   PRECLUDE EXPERT
24                                   )         TESTIMONY BY DEFENSE;**
                                     )   **(L)   PRECLUDE HEARSAY;**
25                                   )   **(M)   PRECLUDE ARGUMENT
                                     )         REGARDING WARNING;**
26                                   )   **(N)   ADMIT 404(b)/609 EVIDENCE;**
                                     )   **(O)   RECIPROCAL DISCOVERY.**
27                                   )   **AND RESPONSE AND OPPOSITION TO
                                     )   DEFENDANT'S MOTIONS.**
28                                   )
                                     )   **TOGETHER WITH STATEMENT OF
                                     )   FACTS AND MEMORANDUM OF
    _____ )   POINTS AND AUTHORITIES.**

1    COMES NOW the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel,

2   KAREN P. HEWITT, United States Attorney, and Christopher M. Alexander, Assistant United States

3   Attorney, and hereby files its Motions in Limine and Response and Opposition to Defendant's motions

4   in limine.  These Motions in Limine and Responses are based upon the files and records of the case

5   together with the attached statement of facts and memorandum of points and authorities.  The United

6   States also hereby renews its motion for reciprocal discovery.

7                                              **I**

8                                **STATEMENT OF THE CASE**

9        On January 3, 2008, Defendant made an appearance and waived time.  The Court scheduled

10   another preliminary hearing date.  On January 15, 2008, the Court granted Defendant's request for a

11   competency examination.

12        On January 16, 2008, a federal grand jury in the Southern District of California returned an

13   Indictment charging Defendant Guillermo Garcia-Lopez ("Defendant") with being a deported alien

14   found in the United States after deportation in violation of 8 U.S.C. § 1326.  The competency hearing

15   was continued on February 19 and 21, 2008 and April 8 and 11, 2008.  On May 14, 2008, the Court

16   found Defendant competent.  Next, Defendant was arraigned and entered a not guilty plea.  The Court

17   set a motion hearing date for June 23, 2008.

18        On May 27, 2008, the Court held a status conference.  At this status, defense counsel requested

19   to review the A-File.  The Court denied this request.  The United States was to produce requested A-File

20   discovery by May 30, 2008.  The Court set a motion hearing for July 21, 2008.  Any motions were to

21   be filed by June 16, 2008 and any supplemental motions by July 7, 2008.  The United States was to

22   respond by July 14, 2008.

23        On June 16, 2008, Defendant filed motions to compel discovery, dismiss the Indictment on

24   various grounds, suppress statements, and grant leave to file further motions.  On July 8, 2008,

25   Defendant filed motions to preclude evidence, reconsideration of the ruling regarding review of the A-

26   File, and grant leave to file further motions.  The United States responded.

27        On July 21, 2008, the Court denied Defendant's motions to dismiss the Indictment, reconsider

28   review of the A-File, preclude evidence, and suppress statements.  However, in its response, the United

1   States stated it would not use Defendant's post-arrest statements in its case-in-chief.  The Court set

2   motions in limine for August 25, 2008 and the trial for August 26, 2008.

3      On August 13, 2008, Defendant filed a declaration with an attachment asserting he is not

4   competent to stand trial.  On August 14, 2008, the United States contacted defense counsel about

5   possible stipulations.  The defense response was to file motions in limine on August 18, 2008.  The

6   United States now files motions in limine and responds to Defendant's motions.

7                                          **II**

8                                 **STATEMENT OF FACTS**

9      **A.    The Instant Offense**

10     On Monday, December 10, 2007, at approximately 12:30 p.m., Escondido Police Officer Beverly

11  Holtz came into contact with an individual, later identified as Defendant.  Defendant was cited for

12  having no bicycle license and possession of marijuana.  Officer Holtz called Immigration and Customs

13  Enforcement.  Officer Holtz learned that Defendant had been previously deported.  Next, Officer Holtz

14  contacted Border Patrol.  This was not her first encounter as an Escondido Police Officer with

15  Defendant.

16     At approximately 2:00 p.m., Senior Patrol Agents Scott Pinckney and James Jordan were

17  assigned to the Murrieta, California area.  They responded to a call from the Escondido Police

18  Department.  Upon arrival, they met with Escondido Police Officer Holtz and learned of her encounter

19  with Defendant.  Senior Patrol Agents Pinckney and Jordan approached Defendant, identified

20  themselves, and questioned him as to his citizenship.  Defendant freely admitted that he was a citizen

21  of Mexico, he did not have any immigration documents, and he crossed illegally near San Ysidro,

22  California on May 30, 2007.

23     At approximately 2:30 p.m., Defendant was release to Border Patrol.  He was taken to the

24  Murrieta Border Patrol Station. At the Station, Defendant was entered into the Automated Biometric

25  Identification System.  This provided Defendant's true identity and some of his prior criminal and

26  immigration histories.

27  / / /

28  / / /

**B.     Defendant's Statements**

Prior to contemplating criminal charges, Border Patrol Agents asked Defendant to complete a Form 215B, a Record of Sworn Statement.  Defendant made a series of admissions.

At approximately 5:23 p.m., while being video taped, Senior Patrol Agent Pinckney advised Defendant in the Spanish language of his communication rights with the Mexican Consulate as witnessed by Senior Patrol Agent Jordan.  Defendant stated that he understood this right.  Senior Patrol Agent Pinckney advised Defendant in the Spanish language of his <u>Miranda</u> warnings as witnessed by Senior Patrol Agent Jordan. Defendant stated that he understood his rights and waived his right to remain silent.

Defendant admitted to the following: (1) being a citizen of Mexico with no legal right to enter the United States; and (2) entering the United States in May of 2007.

From Defendant's immigration file, as detailed below, he had made many admissions in deportation proceedings including at hearing, in declarations, and in records of sworn statement.

**C.     Defendant's Criminal and Immigration History**

Defendant has a series of convictions which include the following:  Defendant was convicted on September 17, 1997, of first degree burglary, in violation of California Penal Code § 460 and received 10 years in prison. He was convicted on December 12, 1990, of possession of marijuana for sale, in violation of California Penal Code § 460 and received 16 months in prison.  He was convicted on January 29, 1990, of illegal entry, in violation of 8 U.S.C. § 1325 and received six months.

Concerning his immigration history, on January 27, 2006, Defendant was ordered deported.  On April 29, 2007, February 2, 2007, June 16, 2006, January 27, 2006, October 23, 1998, and December 18, 1989, he and was physically removed from the United States to Mexico.

**III**

**THE UNITED STATES' MOTIONS IN LIMINE**

A pretrial motion is an appropriate means of testing the sufficiency of a proffered defense and precluding evidence thereof if the defense is found to be insufficient.  Fed. R. Crim. P. 12(b) ("Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion."); <u>United States v. Peltier</u>, 693 F.2d 96, 97-98 (9th Cir. 1982) (per

1    curiam); United States v. Shapiro, 669 F.2d 593, 596-97 (9th Cir. 1982); see also Fed. R. Crim. P. 12(e).

2    Generally, motions are capable of pretrial determination if they raise issues of law, rather than issues

3    of fact.  United States v. Jones, 542 F.2d 661, 664 (6th Cir. 1976).

4    **A.**    **The Court Should Admit A-File Documents**

5         The United States intends to offer documents from the Department of Homeland Security's "A-

6    File" that corresponds to Defendant's name in order to establish Defendant's alienage, prior

7    deportations, and that he was subsequently found in the United States without having sought or obtained

8    authorization from the Secretary of Homeland Security.  The documents are self-authenticating "public

9    records," Fed. R. Evid. 803(8)(B), or, alternatively, "business records."  Fed. R. Evid. 803(6).

10        The Ninth Circuit addressed the admissibility of A-File documents in United States v.

11   Bahena-Cardenas, 411 F.3d 1067, 1074-75 (9th Cir. 2005) (denying a challenge based upon Crawford

12   v. Washington, 541 U.S. 36 (2004)).  The appellate court held that "the warrant of deportation is

13   nontestimonial because it was not made in anticipation of litigation, and because it is simply a routine,

14   objective, cataloging of an unambiguous factual matter."  Id.; see also United States v. Loyola-

15   Dominguez, 125 F.3d 1315 (9th Cir. 1997).

16        In Loyola-Dominguez, the defendant appealed his § 1326 conviction, arguing, among other

17   issues, that the district court erred in admitting at trial certain records from the illegal immigrant's "A-

18   File."  Id. at 1317.  The district court had admitted: (1) a prior warrant of deportation; (2) a prior warrant

19   for the defendant's arrest; (3) a prior deportation order; and (4) an order to show cause.  The defendant

20   argued that admission of the documents violated the rule against hearsay, and denied him his Sixth

21   Amendment right to confront witnesses.  The Ninth Circuit rejected his argument, holding that the

22   documents were properly admitted as public records.  Id. at 1318.  The Court first noted that documents

23   from a defendant's immigration file, although "made by law enforcement agents, . . . reflect only

24   'ministerial, objective observation[s]' and do not implicate the concerns animating the law enforcement

25   exception to the public records exception."  Id. (quoting United States v. Hernandez-Rojas, 617 F.2d

26   533, 534-35 (9th Cir. 1980)).  The Court also held that such documents are self-authenticating and,

27   therefore, do not require an independent foundation.  Id.

28        Courts in this Circuit have consistently held that documents from a defendant's immigration file

                                                    4                          08CR0135-LAB

1    are admissible in a § 1326 prosecution to establish the defendant's alienage and prior deportation.  <u>See</u>

2    <u>United States v. Hernandez-Herrera</u>, 273 F.3d 1213, 1218 (9th Cir. 2001) (affirming the admission of

3    deportation documents to prove alienage); <u>United States v. Mateo-Mendez</u>, 215 F.3d 1039, 1042-45 (9th

4    Cir. 2000) (district court properly admitted certificate of nonexistence); <u>United States v. Contreras</u>, 63

5    F.3d 852, 857-58 (9th Cir. 1995) (district court properly admitted warrant of deportation, deportation

6    order and deportation hearing transcript); <u>United States v. Hernandez-Rojas</u>, 617 F.2d at 535 (district

7    court properly admitted warrant of deportation as public record); <u>United States v. Dekermenjian</u>, 508

8    F.2d 812, 814 n.1 (9th Cir. 1974) (district court properly admitted "certain records and memoranda of

9    the Immigration and Naturalization Service" as business records, noting that records would also be

10   admissible as public records); <u>United States v. Mendoza-Torres</u>, 285 F. Supp. 629, 631 (D. Ariz. 1968)

11   (admitting warrant of deportation); <u>see also</u> <u>United States v. Ray</u>, 920 F.2d 562, 566 (9th Cir. 1990)

12   (admitting welfare documents under the business records exception).

13       Defendant may attempt to distinguish <u>Hernandez-Herrera</u>.  However, the Ninth Circuit could not

14   be more clear when it held that "deportation documents are admissible to prove alienage under the

15   public records exception to the hearsay rule."  <u>Hernandez-Herrera</u>, 273 F.3d at 1218.

16       The Ninth Circuit has made clear that deportation documents are evidence of alienage:

17       Although neither a deportation order, <u>see</u> <u>United States v. Sotelo</u>, 109 F.3d 1446, 1449
         (9th Cir. 1997) (citing <u>United States v. Ortiz-Lopez</u>, 24 F.3d 53, 55 (9th Cir. 1994)), nor
18       the defendant's own admissions, <u>see</u> <u>United States v. Hernandez</u>, 105 F.3d 1330, 1332
         (9th Cir. 1997), standing alone, will support the conclusion that a defendant is an alien,
19       here the government offered Ramirez-Cortez's prior **deportation order**, **admissions
         Ramirez-Cortez made in his underlying deportation proceeding**, and the testimony
20       of an INS agent that his review of Ramirez-Cortez's immigration records reflected that
         Ramirez-Cortez was an alien.  Based on this evidence, a rational trier of fact could have
21       found beyond a reasonable doubt that Ramirez-Cortez was an alien.  <u>Cf.</u> <u>United States
         v. Sotelo</u>, 109 F.3d 1446, 1449 (9th Cir. 1997) (finding sufficient evidence of alienage
22       where the government's evidence consisted of a prior **deportation order**, the
         defendant's admissions to an INS agent that he was a Mexican citizen, and his
23       **admissions during the deportation hearing** that he was not a United States citizen);
         <u>United States v. Contreras</u>, 63 F.3d 852, 858 (9th Cir. 1995) (holding that sufficient
24       evidence supported the conviction when the government introduced a prior **deportation
         order**, the **deportation hearing transcript**, which indicated that the defendant admitted
25       his Mexican citizenship under oath, and testimony of an INS agent that the defendant
         was a Mexican citizen).

26

27   <u>United States v. Ramirez-Cortez</u>, 213 F.3d 1149, 1158 (9th Cir. 2000) (emphasis added).

28       The Ninth Circuit has affirmed the admission of orders to show cause, <u>see</u> <u>Sotelo</u>, 109 F.3d at

1449, admissions made during deportation hearings, see id., and transcripts, see Contreras, 63 F.3d at 858. In Sotelo, the Ninth Circuit described a list of evidence that was admitted at trial which supported a defendant's § 1326 conviction:

> The prosecution also presented several documents from the prior deportation proceeding. During the **deportation hearing**, Sotelo admitted, through his lawyer, allegations in the order to show cause that he is not a citizen or national of the United States and he is a native and citizen of Mexico. The prosecution presented the **order to show cause** and an **advisement of rights form**, which Sotelo signed. The advisement of rights form stated that Sotelo admitted he was in the United States illegally. Finally, the prosecution presented the order of deportation and the warrant of deportation, evidencing Sotelo's actual deportation.

109 F.3d at 1449 (emphasis added). Regarding the warning to alien ordered deported, it is admissible as evidence of Defendant's intent to violate § 1326 and lack of mistake.

Finally, as noted previously, in Loyola-Dominguez, the Ninth Circuit rejected Defendant's argument that admission of the A-File documents violates his Sixth Amendment right to confront witnesses. Id. at 1318. Nothing has changed. See Bahena-Cardenas, 411 F.3d at 1074-75. Thus, the Crawford holding does not affect the admissibility of statements that qualify for admission under those hearsay exceptions.

The United States will seek to admit the A-File documents as a nontestimonial business records and public documents. Therefore, any Confrontation Clause argument should be rejected. Accordingly, the Court should allow the United States to admit documents from Defendant's A-File.

## B.    The Evidence of Lack of Permission Is Admissible

It is anticipated that Defendant may argue that the evidence of lack of permission is not admissible. Despite any claims to the contrary, the Certificate of Nonexistence of Record and testimony of the A-File custodian's search of the A-File is admissible.

First, the testimony is not a pretrial testimonial statement and its admission would not violate the Sixth Amendment. These arguments based upon the Confrontation Clause have been rejected. See United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997); see also United States v. Cervantes-Flores, 421 F.3d 825, 831 (9th Cir. 2005) (holding that "the CNR is nontestimonial evidence under Crawford and thus was properly admitted by the district court."). The United States will seek to admit the testimony of the A-File custodian as a nontestimonial business record and public document.

1  Moreover, if the Court allows him to do so, Defendant will have the opportunity to confront the

2  custodian regarding the quality of the records checks.  Therefore, any Confrontation Clause argument

3  should be rejected.

4      Second, any cross-examination regarding the possibility of a nonexistent application for

5  permission is irrelevant.  In United States v. Rodriguez-Rodriguez, 393 F.3d 849, 856 (9th Cir. 2005),

6  the defendant sought to elicit testimony on cross-examination from a witness for the United States

7  regarding the following claims: (1) INS computers are not fully interactive with other federal agencies'

8  computers; (2) over 2 million documents filed by immigrants have been lost or forgotten; (3) other

9  federal agencies have the ability and authority to apply for an immigrant to come into the United States;

10  and (4) the custodian never checked with the other federal agencies to inquire about documents relating

11  to the defendant.  This Court sustained objections to this line of cross-examination finding that it was

12  irrelevant.  Id.  The Ninth Circuit agreed stating that "[n]one of that information is relevant on the facts

13  of this case, because it is uncontested that [the defendant] never made any application to the INS or any

14  other federal agency."  Id.

15      As in Rodriguez, Defendant has not presented any evidence that he had applied for reentry.  As

16  in Rodriguez, any testimony from witnesses for the United States regarding the types of checks

17  performed to show the lack of an application for reentry would be irrelevant.

18      This type of cross-examination is also irrelevant to this § 1326 prosecution.  The Ninth Circuit

19  has stated what is required for permission to reapply:

20      The INS has promulgated regulations that govern the process by which the Attorney
       General will "[c]onsent to [a deported alien] reapply[ing] for admission[.]" 8 C.F.R. §
21      212.2.  These regulations include the requirement that a deported alien must have
       remained out-side of the United States for a minimum of five consecutive years.  Id. §
22      212.2(a).  Pina-Jaime did not meet this requirement.  Nor did he submit the required
       form I-212 to the INS to obtain consent of the Attorney General to reapply for
23      admission.  See United States v. Sanchez-Milam, 305 F.3d 310, 312-13 (5th Cir. 2002),
       cert. denied, 537 U.S. 1139, 154 L. Ed. 2d 834, 123 S. Ct. 932 (2003).  Accordingly, the
24      Attorney General did not "expressly consent[] to [Pina-Jaime's] reapplying for
       admission" as required by the statute.  See 8 U.S.C. § 1326(a)(2).

25

26  United States v. Pina-Jaime, 332 F.3d 609, 611-12 (9th Cir. 2003).  There is no evidence supporting that

27  Defendant has done so.  Accordingly, the Court should admit the Certificate of Nonexistence of Record

28  and permit the A-File custodian to testify regarding Defendant's lack of permission.

1        **C.      The A-File Custodian May Testify Regarding A-File Records**

2            The United States intends to call an immigration agent as the custodian of Defendant's A-File.

3    This testimony about the contents of the file, record-keeping procedures, and the meaning of certain

4    documents will be based on personal, on-the-job experience.  See Fed. R. Evid. 701 (such testimony is

5    "helpful to a clear understanding of the determination of a fact in issue"); United States v. VonWillie,

6    59 F.3d 922, 929 (9th Cir. 1995) (in a drug case, the court found that "[t]hese observations are common

7    enough and require such a limited amount of expertise, if any, that they can, indeed, be deemed lay

8    witness opinion"); United States v. Loyola-Dominguez, 125 F.3d 1315, 1317 (9th Cir. 1997) (agent

9    "served as the conduit through which the government introduced documents from INS' Alien Registry

10    File".).   The procedure has been implicitly approved by the Ninth Circuit in numerous § 1326

11    prosecutions.  See, e.g. United States v. Mateo-Mendez, 215 F.3d 1039, 1042-45 (9th Cir. 2000);

12    Loyola-Dominguez, 125 F.3d at 1318.

13        **D.      The Court Should Admit Testimony From the United States' Expert**

14            At trial, the United States intends to offer testimony of a fingerprint expert to identify Defendant

15    as the person who was previously deported.  Additionally, the United States may elicit testimony from

16    an immigration agent as the custodian of Defendant's A-File that may explain the deportation process.

17            If specialized knowledge will assist the trier-of-fact in understanding the evidence or

18    determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in

19    question.  Fed. R. Evid. 702.  Determining whether expert testimony would assist the trier-of-fact in

20    understanding the facts at issue is within the sound discretion of the trial judge.  United States v. Alonso,

21    48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994).  An

22    expert's opinion may be based on hearsay or facts not in evidence where the facts or data relied upon

23    are of the type reasonably relied upon by experts in the field.  Fed. R. Evid. 703.  In addition, an expert

24    may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the

25    trier-of-fact.  Fed. R. Evid. 704.

26    / / /

27    / / /

28    / / /

**E.    The Court Should Exclude Witnesses During Trial With The Exception of the United States' Case Agent**

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter has been essential in moving the investigation forward to this point and is considered by the United States to be essential in the presentation of the evidence at trial. As such, the case agent's presence at trial is necessary to the United States.

**F.    The Court Should Prohibit Collateral Attack of Prior Deportations**

In United States v. Garza-Sanchez, the Ninth Circuit held that a defendant who previously waived his right to appeal, cannot collaterally attack his deportation:

> A defendant charged under 8 U.SC. § 1326 may not collaterally attack the underlying deportation order if he or she did not exhaust administrative remedies in the deportation proceedings, including direct appeal of the deportation order. [Cites omitted.] Accordingly, a valid waiver of the right to appeal a deportation order precludes a later collateral attack. [Cites omitted.]

217 F.3d 806, 808 (9th Cir. 2000). In this case, Defendant previously, validly waived his right to appeal his deportation order and cannot attack that order at trial.

Additionally, the lawfulness of Defendant's prior deportation order is not an element of the offense in a prosecution under 8 U.S.C. § 1326. Therefore, this issue should not be submitted to the jury for determination of the lawfulness of the deport.

In United States v. Alvarado-Delgado, 98 F.3d 492 (9th Cir. 1996), the Ninth Circuit overruled its prior decision in United States v. Ibarra, 3 F.3d 1333 (9th Cir. 1993), in so far as it held that the lawfulness of a prior deportation is an element of the offense under § 1326. Alvarado-Delgado, 98 F.3d at 493. The court noted that while some jurisdictions hold that a prior deportation is an element of the offense if the deportation is "lawful," the statute itself contains no such limitation, stating simply "[a]ny alien who has been arrested and deported or excluded or deported," 8 U.S.C. § 1326(1), "will be guilty of a felony if the alien thereafter, enters, attempts to enter, or is at any time found in the United States." 8 U.S.C. § 1326 (2). In fact, the Ninth Circuit has held that all § 1326(b)(2) requires is the alien's "physical removal." See, e.g., United States v. Luna-Madellaga, 315 F.3d 1224, 1227 (9th Cir. 2003).

Because the lawfulness of the prior deportation is not an element of the offense under § 1326,

1    Defendant does not have a right to have the issue determined by a jury.  Moreover, Defendant has not

2    yet challenged the lawfulness of his deportation.

3    **G.    The Court Should Prohibit Reference To Why Defendant Reentered the United States**

4

5    Defendant may attempt to offer evidence that he was seeking to visit family members as the

6    reason for his reentry.  The Court should preclude him from doing so.

7    Evidence of <u>why</u> Defendant violated § 1326 is irrelevant to the question of <u>whether</u> he did so --

8    the only material issue in this case.  The case of <u>United States v. Komisaruk</u>, 885 F.2d 490 (9th Cir.

9    1980) is illustrative.  There, Komisaruk was convicted of willfully damaging government property by

10   vandalizing an Air Force computer.  <u>Id.</u> at 491.  On appeal, she argued that the district court erred in

11   granting the government's motions <u>in</u> <u>limine</u> to preclude her from introducing her "political, religious,

12   or moral beliefs" at trial.  <u>Id.</u>  at 492.  In particular, she argued that she was entitled to introduce

13   evidence of her anti-nuclear war views, her belief that the Air Force computer was illegal under

14   international law, and that she was otherwise morally and legally justified in her actions.  <u>Id.</u> at 492-93.

15   The district court held that her "personal disagreement with national defense policies could not be used

16   to establish a legal justification for violating federal law nor as a negative defense to the government's

17   proof of the elements of the charged crime," <u>Id.</u> at 492, and the Ninth Circuit affirmed.  Similarly here,

18   the reason why Defendant reentered the United States is irrelevant to any fact at issue in this case.

19   **H.    The Court Should Prohibit Reference To Prior Residency**

20   If Defendant seeks to introduce evidence of any former residence in the United States, legal or

21   illegal, at trial, the Court should preclude him from doing so.  Such evidence is not only prejudicial, but

22   irrelevant and contrary to Congressional intent.

23   In <u>United States v. Ibarra</u>, the district court granted the United States' motion <u>in</u> <u>limine</u> to

24   preclude Ibarra from introducing "evidence of his prior legal status in the United States, and the

25   citizenship of his wife, mother and children" in a § 1326 prosecution. 3 F.3d 1333, 1334 (9th Cir. 1993)

26   <u>overruled on limited and unrelated grounds by</u> <u>United States v. Alvarado-Delgado</u>, 98 F.3d 492, 493

27   (9th Cir. 1996).  He appealed, and the Ninth Circuit affirmed, reasoning that, because Ibarra had failed

28   to demonstrate how the evidence could possibly affect the issue of his alienage, the district court

10

1    properly excluded it as irrelevant.  Id.

2        Similarly, in United States v. Serna-Vargas, 917 F. Supp. 711 (C.D. Cal. 1996), the defendant

3    filed a motion in limine to introduce evidence of what she termed "defendant facto" citizenship as an

4    affirmative defense in a Section 1326 prosecution.  Id. at 711.  Specifically, she sought to introduce

5    evidence of:

6            (1) involuntariness of initial residence; (2) continuous residency since childhood; (3) fluency in
             the English language; and (4) legal residence of immediate family members.
7

8    Id. at 712.

9        Judge Rafeedie denied the motion, noting that "none of these elements are relevant to the

10   elements that are required for conviction under Section 1326."  Id. at 712.  He also noted that admission

11   of the evidence would run "contrary to the intent of Congress."  Id.  In particular, he noted that, under

12   Section 212 of the Immigration and Naturalization Act of 1952 (codified at 8 U.S.C. § 1182(c)), the

13   Attorney General may exercise her discretion not to deport an otherwise deportable alien, if the alien

14   has lived in the United States for 7 years. Id. at 712-13.  The factors which the defendant relied upon

15   to establish her "defendant facto" citizenship, Judge Rafeedie noted, are "among the factors the Attorney

16   General considers in deciding whether to exercise this discretion."  Id. at 713.

17       Thus, Judge Rafeedie reasoned, "the factors that [the defendant] now seeks to present to the jury

18   are ones that she could have presented to the jury are ones that she could have presented the first time

19   she was deported."  Id.  Therefore, he held, "[a]llowing her to present the defense now would run

20   contrary to Congress' intent."  Id.  In particular, "under the scheme envisioned by Congress, an alien

21   facing deportation may present evidence of positive equities only to administrative and Article III

22   judges, and not to juries."  Id. (emphasis added).

23       **I.    The Court Should Prohibit Reference To Defendant's Health, Age, Finances,
                 Education, and Potential Punishment**
24

25       Evidence of, and thus argument referring to, Defendant's health, age, finances, education, and

26   potential punishment is inadmissible and improper.

27       Rule 403 provides further that even relevant evidence may be inadmissible "if its probative value

28   is substantially outweighed by the danger of unfair prejudice."  The Ninth Circuit Model Jury

1    Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions,

2    prejudices, or sympathy." § 3.1 (2000 Edition).[1]

3         Reference to Defendant's health, age, finances, education, and potential punishment may be

4    relevant at sentencing. However, in an illegal entry trial, such reference is not only irrelevant and

5    unfairly prejudicial, but a blatant play for sympathy and jury nullification as well.

6         **J.    The Court Should Preclude Evidence of Duress and Necessity**

7         Courts have specifically approved the pretrial exclusion of evidence relating to a legally

8    insufficient duress defense on numerous occasions. See United States v. Bailey, 444 U.S. 394 (1980)

9    (addressing duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996) (addressing duress).

10   Similarly, a district court may preclude a necessity defense where "the evidence, as described in the

11   defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." United

12   States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

13        In order to rely on a defense of duress, Defendant must establish a prima facie case that:

14        (1)    Defendant committed the crime charged because of an immediate threat of death or

15               serious bodily harm;

16        (2)    Defendant had a well-grounded fear that the threat would be carried out; and

17        (3)    There was no reasonable opportunity to escape the threatened harm.

18   United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997. If Defendant fails to

19   make a threshold showing as to each and every element of the defense, defense counsel should not

20   burden the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. at 416.

21        A defendant must establish the existence of four elements to be entitled to a necessity defense:

22        (1)    that he was faced with a choice of evils and chose the lesser evil;

23        (2)    that he acted to prevent imminent harm;

24        (3)    that he reasonably anticipated a causal relationship between his conduct and the harm

25               to be avoided; and

26        (4)    that there was no other legal alternatives to violating the law.

27   ───────────────

28        [1]    Additionally, it is inappropriate for a jury to be informed of the consequences of their
     verdict. United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991).

See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985). A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195.

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing satisfying each and every element of the defense. The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments.

**K.    The Court Should Preclude Any Expert Testimony By Defense Witnesses**

The United States requests permission to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of Defendant, which Defendant intends to introduce as evidence in his case-in-chief at trial or which were prepared by a witness whom Defendant intends to call at trial. Moreover, the United States requests disclosure of written summaries of testimony that Defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. The summaries are to describe the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications. While defense counsel may wish to call an expert to testify, Defendant must provide notice of any expert witness and any reports by expert witnesses. Accordingly, Defendant should not be permitted to introduce any expert testimony.

If the Court determines that Defendant may introduce expert testimony, the United States requests a hearing to determine this expert's qualifications and relevance of the expert's testimony pursuant to Federal Rule of Evidence 702 and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999). See United States v. Rincon, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision to not admit the defendant's proffered expert testimony because there had been no showing that the proposed testimony related to an area that was recognized as a science or that the proposed testimony would assist the jury in understanding the case); see also United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir. 2000).

1

**L.      Self-Serving Hearsay Is Inadmissible**

2      Defendant's out of court statements are inadmissible hearsay when offered by Defendant through

3    witnesses.  Defendant cannot rely on Fed. R. Evid. 801(d)(2) because he is not the proponent of the

4    evidence, and the evidence is not being offered against him.  Defendant cannot attempt to have "self-

5    serving hearsay" brought before the jury without the benefit of cross-examination.  See, e.g., United

6    States v. Ortega, 203 F.3d 675, 679 (9th Cir. 2000); United States v. Fernandez, 839 F.2d 639, 640 (9th

7    Cir. 1988); see also United States v. Alarcon-Simi, 300 F.3d 1172 (9th Cir. 2002) (holding that the

8    defendant's post-arrest statement was not admissible as an excited utterance).

9      In this case, the United States anticipates that Defendant may attempt to have the United States'

10    witnesses testify about certain statements which Defendant made to Agents.  Thus, the United States

11    moves, in limine, to prohibit Defendant from eliciting self-serving hearsay from: (a) the United States'

12    witnesses or (b) defense witnesses.

13

**M.      The Court Should Preclude Defendant from Arguing Permission to Reenter Based
Upon Warning to Alien Deported**

14

15      The Court should precluded any argument that Defendant believed he was not required to obtain

16    the permission from the Attorney General or his designated successor the Secretary of the Department

17    of Homeland Security prior to reentry into the United States or he believed he had permission to enter

18    the United States based on any confusion or alleged error in the execution of the I-294 Warning to an

19    Alien Deported.  See United States v. Ramirez-Valencia, 202 F.3d 1106, 1109-10 (9th Cir. 2000)

20    (holding that any such a claim is legally insufficient and improper argument).

21

**N.      The Court Should Admit 404(b) and 609 Evidence**

22      Defendant was provided a copy of his rap sheet and many of his conviction records.  The United

23    States intends to introduce his extensive criminal and immigration history as 404(b) and 609 evidence.

24      As evidence of other acts, the United States intends to introduce his prior immigration contacts.

25    This would include statements made in those apprehensions: (1) Deportation Tape Including December

26    18, 1989 Proceeding; (2) April 28, 2007 Record of Sworn Statement; (3) October 22, 1998 Declaration;

27    (4) Deportation Tape Including January 27, 2006 Proceeding; (5) December 10, 2007 Record of Sworn

28    Statement; and (6) December 10, 2007 Recorded Post-Arrest Statement.  Finally, all of his prior

1    removals should be admissible: (1) December 18, 1989 Warrant of Deportation; (2) April 29, 2007

2    Warrant of Deportation; (3) October 23, 1998 Warrant of Deportation; (4) January 27, 2006 Warrant

3    of Deportation; (5) June 16, 2006 Warrant of Deportation; and (6) April 26, 2007 Warrant of

4    Deportation.

5        This crime, wrong, or act is relevant to Defendant's current case. Rule 404(b) of the Federal

6    Rules of Evidence precludes the admission of evidence of "other crimes . . . to prove the character of

7    a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Evidence of other

8    crimes, however, is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge,

9    identity, or absence of mistake or accident." Fed. R. Evid. 404(b).

10       The Ninth Circuit has adopted a four-part test to determine the admissibility of evidence under

11    Rule 404(b). See United States v. Montgomery, 150 F.3d 983, 1000-01 (9th Cir. 1998). The court

12    should consider the following: (1) the evidence of other crimes must tend to prove a material issue in

13    the case; (2) the other crime must be similar to the offense charged; (3) proof of the other crime must

14    be based on sufficient evidence; and (4) commission of the other crime must not be too remote in time.

15    Id. In addition to satisfying the four-part test, evidence of other crimes must also satisfy the Rule 403

16    balancing test - its probative value must not be substantially outweighed by the danger of unfair

17    prejudice. See Fed. R. Evid. 403.

18       In United States v. Graham, 575 F.2d 739, 740 (9th Cir. 1978), the defendant was being

19    prosecuted for § 1326 and had previously been convicted of "being illegally in the United States." The

20    district court admitted a probation officer's testimony that the defendant was the same person that had

21    previously been convicted of "being illegally in the United States." Id. The defendant appealed arguing

22    that the probation officer's testimony was not admissible. Id. Holding that "[t]his appeal approaches

23    the frivolous," the Ninth Circuit affirmed. Id.

24       Similarly, in United States v. Bejar-Matrecios, 618 F.2d 81, 83-84 (9th Cir. 1980), the district

25    court admitted the defendant's prior § 1325 conviction in his § 1326 prosecution. The Ninth Circuit

26    held that a prior § 1325 conviction is relevant to a § 1326 prosecution. Id. However, the certified copy

27    of the judgment and commitment order was too prejudicial because it was not introduced with a limiting

28    instruction. Id.

1    Here, the United States will be requesting a limiting instruction. Defendant's prior

2  apprehensions and removals prove that he is an alien and he intended to enter the United States without

3  permission, elements that Defendant may challenge at trial. The proof of Defendant's apprehensions

4  and removals would be made by witnesses and certified records. Most of Defendant's apprehensions

5  and removals occurred within 10 years of the date of the offense. Moreover, with a limiting instruction,

6  the probative value is not substantially outweighed by any prejudicial effect.

7    This crime, wrong, or act is also relevant to Defendant's trustworthiness. Defendant's

8  trustworthiness would tend to make the existence of facts that are of consequence more or less probable.

9    As impeachment, the United States will introduce Defendant's 1997 burglary and 1990 illegal

10  entry convictions. The United States will request the convictions be redacted prior to introduction.

11    Federal Rule of Evidence 609(a) provides in pertinent part:

12    For purposes of attacking the credibility of a witness, (1) evidence that
        a witness other than an accused has been convicted of a crime shall be
13    admitted, subject to Rule 403, if the crime was punishable by death or
        imprisonment in excess of one year under the law under which the
14    witness was convicted, <u>and evidence that an accused has been convicted
        of such a crime shall be admitted if the court determines that the</u>
15    <u>probative value of admitting this evidence outweighs its prejudicial effect
        to the accused;</u> and (2) evidence that any witness has been convicted of
16    a crime shall be admitted if it involved dishonesty or false statement,
        regardless of the punishment.

17

18  Fed. R. Evid. 609(a) (emphasis added).

19    The Ninth Circuit has listed five factors that the district court should balance in making the

20  determination required by Rule 609. <u>United States v. Browne</u>, 829 F.2d 760 (9th Cir. 1987).

21  Specifically, the court must consider: (1) the impeachment value of the prior crime; (2) the point in time

22  of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the

23  charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's

24  credibility. <u>Id.</u> at 762-763. The Ninth Circuit applied these factors in <u>United States v. Martinez</u>, 369

25  F.3d 1076, 1088 (9th Cir. 2004), and affirmed the defendant's impeachment with a sanitized drug

26  conviction in a § 1326 prosecution.

27    In this case, it is anticipated that Defendant will dispute at least one of the elements. Thus, as

28  in <u>Martinez</u>, his credibility is squarely at issue in this § 1326 prosecution. If Defendant chooses to

1    testify at trial, the United States should not be prevented from demonstrating Defendant's lack of

2    trustworthiness by utilizing his prior convictions for impeachment purposes.  Moreover, because his

3    prior convictions included crimes of dishonesty, they are admissible.

4                                                    **IV**

5                              **DEFENDANT'S MOTIONS IN LIMINE**

6            Defendant filed various motions in limine.  The United States provides the following responses

7    to Defendant's motions.

8            **A.    Evidence Not Produced in Discovery**

9            Defendant requests the Court preclude evidence of his apprehension by Escondido Police due

10   to the failure of the United States to produce Officer Holtz' report sooner than last week.  Witness

11   statements would not be subject to production until after the witness for the United States testifies and

12   provided that a "motion" is made by Defendant.  See Fed. R. Crim. P. 16(a)(2) and 26.2.  Nevertheless,

13   the United States produced that substance of Officer Holtz' report months ago since it was incorporated

14   in the Border Patrol Agent's reports and the citations issued to Defendant.  Moreover, Defendant should

15   be aware that Officer Holtz has contacted Defendant before for which no reports exist.

16           Assuming there was some discovery violation, the Court should not suppress evidence of

17   Defendant's apprehension.  By analogy, the Supreme Court has held that "the 'body' or identity of a

18   defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an

19   unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." INS

20   v. Lopez-Mendoza, 468 U.S. 1032, 1039, 1044 (1984); see also United States v. Crews, 445 U.S. 463,

21   474 (1980); United States v. Del Toro Gudino, 376 F.3d 997, 1001 (9th Cir. 2004) (holding that "the

22   simple fact of who a defendant is cannot be excluded, regardless of the nature of the violation leading

23   to his identity").  If a defendant's identity cannot be suppressed for a constitutional violation, it should

24   not be suppressed for a discovery violation.  Thus, Defendant's request should be denied.

25           **B.    404(b) and 609 Evidence**

26           Please see the United States motions in limine.  Additionally, in its July 21, 2008 response and

27   opposition, the United States provided the following notice:

28                   Should the United States seek to introduce any similar act evidence pursuant to Federal
                     Rules of Evidence 404(b) or 609, the United States will provide Defendant with notice

of its proposed use of such evidence and information about such bad act at the time the United States' trial memorandum is filed. However, to avoid any arguments concerning lack of notice, the United States intends to introduce Defendant's prior immigration contacts and burglary and illegal entry convictions as evidence of intent to enter the United States, alienage, prior deportation, and lack of application for admission. Moreover, Defendant's burglary conviction listed in the criminal history section above will be introduced to impeach him should he testify.

This is more than sufficient.

### C.    Deportation Documents as Evidence of Alienage

Please see the United States motions in limine.

### D.    Compel Inspection of Certified Records

Without citing to any authority, Defendant requests an opportunity review certified records. The United States will provide the defense a copy of all the certified records the United States intends to introduce in its case-in-chief the morning of trial.

### E.    Preclude A-File Custodian From Testifying About Immigration Proceeding

Please see the United States motions in limine.

### F.    Preclude A-File Custodian From Testifying About Database Searches

Defendant argues that the A-File custodian should be precluded from testifying about the custodian's search of computer databases and the A-File. First, Defendant argues that the best evidence rule under Federal Rule of Evidence 1001(3) precludes any search testimony and cites United States v. Bennett, 363 F.3d 947, 953 (9th Cir. 2004). "The best evidence rule provides that the original of a 'writing, recording, or photograph' is required to prove the contents thereof." Id. In Bennett, the Agent was seeking to introduce evidence of data points recovered from a boat's global positioning system to establish the boat's path. Id. The Agent was not a percipient witness to the boat's travels. Id. The Ninth Circuit held that the computer system was the best evidence of the data. Id.

The Bennett case is distinguishable from this case. Here, the custodian will be testifying about the lack of contents, data, or an application. There is no original to produce because nothing exists. Moreover, unlike Bennett, the custodian actually performed the search and can testify about the results as a percipient witness to the results of the search.

Second, Defendant argues that the testimony violates his confrontation clause rights. In support, he argues that the lack of a statement (input into the system or application in the file) is a hearsay

1    statement.  The Ninth Circuit has rejected a similar argument regarding Certificates of Non-existence

2    of Record.  See United States v. Cervantes-Flores, 421 F.3d 825, 831 (9th Cir. 2005) (holding that "the

3    CNR is nontestimonial evidence under Crawford and thus was properly admitted by the district court.").

4    The Ninth Circuit reasoned that "[a]lthough Jones made the certification at the request of the prosecutor,

5    the class of records as to whose contents she prepared her certification were created and kept in the

6    ordinary course of the INS's activities, prior to and regardless of Cervantes' prosecution."  Id.; see also

7    Fed. R. Evid. 803(10) ("The following are not excluded by the hearsay rule, even though the declarant

8    is available as a witness: To prove the absence of a record . . . or nonexistence of a matter of which a

9    record . . . was regularly made and preserved by a public office or agency, evidence in the form of a

10   certification in accordance with rule 902, or testimony, that diligent search failed to disclose the

11   record."); Fed. R. Evid. 803(6) advisory committee's note (stating that the "element of unusual

12   reliability of business records is said variously to be supplied by systematic checking, by regularity and

13   continuity which produce habits of precision, by actual experience of business in relying upon them, or

14   by a duty to make an accurate record as part of a continuing job or occupation" and that the phrase

15   "course of a regularly conducted activity" is intended to capture the "essential basis" of the business

16   records exception).  For the same reasons, Defendant's challenge should be rejected here.  The

17   testimony is not hearsay under Fed. R. Evid. 803(10).  The custodian will testify that a diligent search

18   failed to disclose any record.  The class of documents searched by the custodian existed prior to and

19   regardless of Defendant's prosecution.

20         Next, Defendant argues that the custodian must be an expert to testify about the searches.  The

21   United States does not agree with this position.  However, it has provided expert notice in its July 21,

22   2008 response and opposition.  Additionally, the records custodian is just that, a custodian.  The

23   custodian was selected by the agency in possession of the records.  The custodian should be permitted

24   to testify that a record does not exist.  The procedure has been implicitly approved by the Ninth Circuit

25   in numerous § 1326 prosecutions.  See, e.g. United States v. Mateo-Mendez, 215 F.3d 1039, 1042-45

26   (9th Cir. 2000); Loyola-Dominguez, 125 F.3d at 1318.  The custodian will be on the witness stand and

27   defense certainly may confront and cross-examine the custodian.  There is no confrontation clause issue.

28   Accordingly, the A-File custodian should be permitted to testifying about the custodian's search of

19                                      08CR0135-LAB

1    computer databases and the A-File.

2    **G.    Allow Impeachment of Hearsay Declarants**

3    Defendant claims that he should be able to challenge the thoroughness of the search for his

4    application to reenter the United States.  Any cross-examination regarding the possibility of a

5    nonexistent application for permission is irrelevant.  See United States v. Rodriguez-Rodriguez, 393

6    F.3d 849, 856 (9th Cir. 2005).  Moreover, this type of cross-examination is also irrelevant to this § 1326

7    prosecution since there is no evidence Defendant has applied for permission to reenter the United States.

8    See United States v. Pina-Jaime, 332 F.3d 609, 611-12 (9th Cir. 2003).  Accordingly, the thoroughness

9    of the search is not a basis for cross-examination.

10    **H.    Attorney Conducted Voir Dire**

11    If the Court permits it, counsel for the United States respectfully requests time to conduct its own

12    limited voir dire of the potential jurors.

13    **I.    Suppress Deportation Hearing Evidence**

14    Defendant argues that the statements obtained during the deportation process should be

15    suppressed because they were obtained in violation of Miranda.  However, the Ninth Circuit has held

16    that "Miranda warnings are not required before questioning in the context of a civil deportation hearing

17    . . . because deportation proceedings are not criminal prosecutions, but are civil in nature."  United

18    States v. Solano-Godines, 120 F.3d 957, 960 (9th Cir. 1997); see also United States v. Salgado, 292 F.3d

19    1169, 1174 (9th Cir. 2002) (affirming the admission of the defendant's statements made to an INS agent

20    handling civil immigration matters since her inquiries regarding the defendant's alien status were

21    routine).  This is because an immigration judge's questions are not reasonably likely to elicit an

22    incriminating response at the time of the statement, and thus an alien is not interrogated within the

23    meaning of Miranda.  As the appellate court explained, "the immigration judge could not be expected

24    to anticipate that two years later Solano would illegally reenter the United States and that his responses

25    to questions at his civil deportation hearing might incriminate him in a prosecution for this future

26    crime."  Solano-Godines, 120 F.3d at 962.

27    Defendant attempts to distinguish Solano-Godines.  He argues that his case is different since he

28    was asked questions in a second deportation hearing after being previously deported.  Therefore, at the

time of the statements he made in the second deportation hearing, he would have been subject to prosecution under 1326. Therefore, any statements he made in this second deportation proceeding would require <u>Miranda</u> warnings. In <u>Solano-Godines,</u> this potential prosecution argument was originally packaged as a potential prosecution for 1325. Since the alien would be subject to a potential prosecution for illegal entry, any statements made by the alien would require a <u>Miranda</u> warning. This potential prosecution argument for 1325 was rejected in <u>Solano-Godines</u>. Defendant's repackaged potential prosecution argument for a violation of 1326 should be rejected here.

The cases cited by Defendant are inapplicable. The cases cited by Defendant address statements taken with regard to crimes that have already been completed while the cases cited by the United States address statements taken with regard to crimes that have not yet occurred. The <u>Miranda</u> decision does not require that immigration judges and other officials advise defendants of rights for yet to be completed crimes. Therefore, Defendant's motion to suppress his statements should be denied.

## J.    **Preclude Evidence of Reinstatement**

Defendant moves to preclude evidence of reinstatements since the process is unconstitutional. As Defendant recognizes, this issue has already been decided against him. <u>See</u> <u>United States v. Diaz-Luevano</u>, 494 F.3d 1159, 1162 (9th Cir. 2007) (per curiam).

## K.    **Grant Leave to File Further Motions**

Defendant's motion for leave to file further motions should be denied except to the extent that such motions are based on new discovery.

## V

## **MOTION FOR FINGERPRINTS AND RECIPROCAL DISCOVERY**

The United States requested a stipulation regarding fingerprint evidence. The United States now requests an opportunity to fingerprint Defendant and for reciprocal discovery. As of today, Defendant has produced no reciprocal discovery. The United States requests that Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of <u>all</u> witnesses, except for those of Defendant. Defendant has not provided the United States with any documents or statements. Accordingly, the United States intends to object at trial and ask this Court to suppress any evidence at trial which has not been provided.

1

## VI

2

## CONCLUSION

3      For the above stated reasons, the United States respectfully requests that its motions in limine

4   be granted and Defendant's motions in limine be denied.

5      DATED: August 19, 2008

6                                                 Respectfully submitted,

7                                                 KAREN P. HEWITT
                                                  United States Attorney
8
                                                  *s/Christopher M. Alexander*
9                                                 CHRISTOPHER M. ALEXANDER
                                                  Assistant U.S. Attorney
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3              UNITED STATES DISTRICT COURT

4            SOUTHERN DISTRICT OF CALIFORNIA

5  UNITED STATES OF AMERICA,        )    Criminal Case No.   08CR0135-LAB
                                    )
6                  Plaintiff,       )
          v.                        )    **CERTIFICATE OF SERVICE**
7                                   )
   GUILLERMO GARCIA-LOPEZ,          )
8                                   )
                   Defendant.       )
9                                   )
   _____)

10

11       IT IS HEREBY CERTIFIED THAT:

12       I, CHRISTOPHER ALEXANDER, am a citizen of the United States and am at least eighteen
   years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-
13  8893.

14       I am not a party to the above-entitled action.  I have caused service of United States' Motions
   in Limine, together with statement of facts, memorandum of points and authorities on the following
15  parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System,
   which electronically notifies them.

16
         1.    Erica Zunkel, Esq.
17             Atty for Defendant

18       I hereby certify that I have caused to be mailed the foregoing, by the United States Postal
   Service, to the following non-ECF participants on this case:
19
         None
20
   the last known address, at which place there is delivery service of mail from the United States Postal
21  Service.

22       I declare under penalty of perjury that the foregoing is true and correct.

23       Executed on August 19, 2008.

24
                                        *s/Christopher M. Alexander*
25                                      CHRISTOPHER M. ALEXANDER

26

27

28